# CHARLESTON.

## SHOWALTER v. CHAMBERS.

Submitted February 29, 1916.   Decided March 7, 1916.

1. EVIDENCE—*Best and Secondary—Contents of Letter—Preliminary Proof—Sufficiency.*   ·
    In laying the foundation for proof of the contents of a letter receipt of which is denied, it suffices, in the absence of an objection on account of form, to prove in general terms that the letter was sent to the parties denying receipt thereof, by the United States mail.   (p. 725).

2. SAME—*Best and Secondary—Contents of Letter or Telegram— Preliminary Proof.*
    Denial of the receipt and possession of a letter or telegram excuses demand for production thereof, as a step preliminary to proof of its contents.   (p. 725).

3. SALES—*Delivery—Transfer of Title—Executed Contract.*
    Delivery of ordinary merchandise to the vendee, under a contract effected by an offer of purchase, after an inspection of the goods, or an opportunity to inspect them, accepted by the vendor, passes the title and makes the contract an executed one.   (p. 726).

4. SAME—*Implied Warranty—Inspection.*
   In such a sale, there is no ·implied warranty of quality or merchantableness.   (p. 726).

5. TRIAL—*Instructions—Construction.*
   An instruction stating the law in the abstract and another applying the stated legal proposition to the facts in issue, may be treated as a single instruction.   (p. 726).

6. NEW TRIAL—*Grounds—Harmless Error—Inaccuracy of Instructions.*
   A verbal inaccuracy in an instruction, such ·as the use of the word ''seen'' for ''inspected,'' in a case in which the evidence clearly proves the fact in issue and to which the word relates, does not warrant a new trial.   (p. ·726).

7. APPEAL AND ERROR—*Verdict—Evidence.*
   A verdict against a clear and decided preponderance of the evidence is properly set aside.   (p. 726).

Error to Circuit Court, Mingo County.

Action by J. W. Showalter against E. B. Chambers. Verdict for plaintiff was set aside, and he brings error.

*Affirmed.*

*Goodykoontz & Scherr,* for plaintiffs in error.

*John H. Greene* and *Wade H. Bronson,* for defendant in error.

POFFENBARGER, JUDGE:

The plaintiff complains of the action of the court in setting aside a verdict for $321.29, obtained in a second trial after an appeal from the judgment of a justice, in a civil action for the recovery of the price of a car load of hay, and granting a new trial.

Oral testimony relating to alleged correspondence and telegraphic communication between the parties, pertaining to their negotiations, which, unfortunately, was not preserved, if it took place, and bearing directly on the principal issue, whether a sale was effected, is ·highly conflicting; ·but some of the documentary evidence and a few facts are undisputed. The hay was billed from Grottoes, Virginia, February 16, 1910, consigned to the plaintiff himself at Matewan, W. Va., and arrived there in Michigan Central car No. 45,908, a few days

later. It was followed by an order dated Weyer's Cave, Va., February 17, 1910, addressed to the "N. & W. R. R. agent, Matewan." and reading as follows: "Dear Sir: Michigan Central No. 45,908 on track. Deliver same to Red Jacket Consolidated Coal Company, Junior. If they refuse, deliver to E. B. Chambers, Respectfully J. W. Showalter." The coal company having refused it, the agent tendered it to Chambers, who had previously given Showalter's agent, J. R. Vaughn, traveling and selling on a commission of $3.00 a car, an order for a car of No. 1 timothy hay, at $21.25 per ton. On February 24, 1910, the day, or about the day, of the tender, Chambers had Blankenship, the station and telegraph company agent, write the following letter, receipt of which the plaintiff admits: "The car of hay has arrived here and its not No. 1 timothy as I bought. I cannot pay $21.25 ton for this as it is not No. 1 stuff. If you want 18.50 per ton for this I will take it, otherwise it is here subject to your orders. Wire me an answer." Whether this offer was accepted by wire is one of the subjects of controversy. On March 2, 1910, Chambers had Blankenship write Showalter as follows: "Referring further to my offer of 18.50 per ton for hay in MC 45098, I find after unloading it the hay is rotten & no good for anything. I have stored same away awaiting your disposition as I cannot sell this hay and don't want it. You still have one car C M & St P 57220 hay refused to the Red Jacket Co. account of the quality. I cannot store this as the other car has taken up all my room." Blankenship says Chambers took a wagon load or two of the hay from the car on February 24th, but Chambers denies that he did. However that may be, the bulk of it was removed from the car on February 28th or March 1st, and stored in a room of a barn rented by Chambers for the purpose. Showalter swears he accepted the offer of $18.50 per ton, about February 26th or 27th, by a telegram, but was unable to produce the original or a copy of it, saying the agents at the two offices from one of which he says he sent it, had informed him the messages of that year had been destroyed in accordance with a rule of the company. Blankenship, the agent at Matewan, said he had no recollection of having received such a telegram, and Chambers denies having received it. The copies of mes-

sages received at that office had likewise been destroyed. Showalter also swears he wrote Chambers a letter, dated March 13, 1910, which reads as follows: ''I am in receipt of your letter of recent date with regard to car hay shipped you & note you only offer eighteen fifty claiming it to be not No. 1 tim. & and I wired you accepting the offer & I now confirm & enclose invoice covering the shipment as per telegram & when unloaded you will send check to cover same inclosing paid freight.'' He kept no carbon or press copy of the letter, but was allowed to introduce a paper which he says is a copy of it, made at the time, but which he did not produce on the first trial. Chambers swears he never received such a letter, but says he did receive, on or about February 28th, a letter expressly declining his offer of $18.50 per ton for the hay, offering to take $20.00 per ton for it, and directing him to store it, if he was unwilling to pay that price. He claims to have misplaced or lost that letter, but proves, in substance, its contents, by his own testimony and that of two other witnesses who say they saw and read it, and offered to prove the same by Vaughn also.

That the hay was almost worthless, in a commercial sense, is fairly well established by the evidence, but there is little, if any, evidence of wilful fraud on the part of the alleged vendor. He was engaged in the business of buying and selling hay and other farm products, and necessarily entrusted a part of his business to agents. He swears he neither personally loaded nor weighed the hay in question and knew nothing of its quality. However, the best of it is said to have been placed at the car doors. Part of it remained in storage for more than a year. Chambers sold some of it and collected a small amount of money on the sales, which likely did not amount to more than his outlay in payment of the freight, rent of the room and expenses of the unloading and deposit in the storage room. He says he kept the residue about fifteen months, or a little over, and finally threw it out in the ditch and over the river bank. He says he made the sales, and tried to make others, at the suggestion of Vaughn, as a means of reimbursement for the freight paid, after vain attempts by himself and Vaughn, to get Showalter to make some disposition of the hay. He says he was unable

to sell any considerable quantity of it, or to collect for some of what he did sell, because it was rotten and unfit for use. The dates of these sales are not given, but the testimony fairly indicates that they postdated the letter of March 2, 1910, by a considerable period of time. That letter clearly advised the plaintiff of the withdrawal of the offer of February 24th, and Vaughn says he advised the plaintiff of the rejection of the hay still later, but was unable to get any response from him.

One of the principal grounds of the attack upon the verdict was newly discovered evidence disclosed by the testimony of witnesses given in support of the motion for a new trial. This evidence was the record of the business done by the telegraph office at Matewan, during the month of February, 1910, showing in dollars and cents, the amounts of business done in that month, between that office and others named in the record, but not any particular messages sent or received, and absence of the telegraph office from which a message would have been received, if sent by the plaintiff, as claimed by him. This record had been in the custody of the agent all the time and he had testified in the case, without producing it, twice, if not three times, giving it as his recollecton in each instance, that no such message had been received. Moreover, he says he suggested to one of the defendant's attorneys, before the end of the last trial, the existence of such a record, but not to the defendant himself. The attorney, not positively denying this communication, said he had no recollection of it.

Whether the new evidence justified the action of the court is extremely doubtful. Being documentary in character, an office record of business done, which, if accurately kept, would show whether any telegram from the place in question was received at Matewan, in the month of February, 1910, it was of higher dignity than treacherous memory of witnesses, and its failure to show such a transaction would be as probative against the claim as an entry would have been in favor of it. Evidence is not legally cumulative merely because it has the same tendency as other evidence. It may have that and still not be cumulative, if it is higher in character. *Grogan* v. *C. & O. Ry. Co.*, 39 W. Va. 415. But there is

grave doubt as to whether requisite diligence to find the record, was exercised. The witness having the custody of it and presumptively cognizant of its character and relevancy, had testified, as a witness for the defendant, twice, if not three times. Besides, he says himself he had talked of the record in the court room before the last trial ended. The omitted evidence was easily within the reach of the defendant, and a reasonably diligent and thoughtful investigation would have disclosed it. Our decisions uniformly hold a litigant to the exercise of diligence to find easily discoverable evidence as well as to avail himself of evidence within his knowledge, and that necessarily includes the obligation to think and act, not merely to act. *Jacobs* v. *Williams,* 67 W. Va. 378.

The motion for a new trial, however, was based upon several other grounds; admission of improper evidence, rejection of proper evidence, refusal of proper instructions, the giving of improper instructions and insufficiency of the evidence to sustain the verdict.

Admission of the copy of plaintiff's alleged letter of March 13, 1910, and the secondary evidence of his alleged telegram of February 26th or 27th, was resisted on highly technical grounds. For lack of proof of demand for production of the alleged letter and invoice of March 13, 1910, the court sustained an objection to the admission of the copies thereof, until the defendant had denied under oath the receipt and possession thereof. The witness said they had been sent through the United States Mails. If he sent them in that way, he necessarily directed the letter, put the requisite stamp on it and deposited it in the post office. In this general way, the evidence included all of the facts or steps necessary to the mailing of the letter. Though informal, the evidence was not objected to on that ground. In the absence of such an objection, the court could well dispense with inquiries as to the details, since the language of the witness was broad enough to include them. If the cross-examination had disclosed lack of any of them, the court would no doubt have excluded the copies. As to the telegram, the witness said the defendant had, in a previous trial, denied receipt and possession thereof, and the court nevertheless refused to admit proof of its contents, until the telegraph company agent

had testified that no such telegram had been received at his office. Neither the written message received for transmission nor the one taken from the wires, if any, was produced. What was offered was necessarily secondary evidence, wherefore the principle declared in *Cobb* v. *Glenn Boom & Lumber Co.*, 57 W. Va. 49, relied upon in argument, has no application. Inability to produce or procure the best evidence justified admission of the secondary.

No error in the rulings on instructions is perceived. Complaint is made of the abstract character of plaintiff's instruction No. 1, but, as it stated applicable law, its form would not be cause for a new trial. Moreover, it and plaintiff's instruction No. 2, applying the law to. the concrete case, may be treated as a single instruction, agreeably to their substance and effect. They directed the jury to find for the plaintiff, if they believed Chambers had offered $18.50 per ton for the hay, after having seen it, and the offer had been accepted by Showalter, and that there was no fraud on the part of the latter. In view of Chambers' admission that he had inspected the hay far enough to enable him to say it was not first class, the direction, although informal and not couched in strictly accurate terms, did not deviate from the law in any substantial sense. His opportunity for full inspection was clearly proven. He need not have made the offer, until after full investigation and he saw fit to do so without it. Subsequent development of a worse condition than he had anticipated constituted no ground of relief from the contract, if he made it, for it had been fully executed at the date of his letter of March 2, 1910, all of the hay having then been removed from the car and placed in the room he had rented. *Eagle Glass & Mfg. Co.* v. *Second Hand Pipe Supply Co.*, 74 W. Va. 228; *Erie City Iron Works* v. *Miller Supply Co.*, 68 W. Va., 519. Nor was there an implied warranty of quality, justifying the prayer for defendant's instruction No. 4, which the court refused. *Erie City Iron Works Co.* v. *Miller Supply Co.* cited; *Hood* v. *Bloch Bros.*, 29 W. Va. 244. Defendant's instruction No. 2 covered the subject matter of his proposed instruction No. 3.

Extreme doubtfulness of the right of the case on the evidence, however, justified the court in its award of a new

trial.   Chambers says he stored the hay pursuant to a direction to him to do so, given in a letter from Showalter, received on or about February 28, 1910.   That he had such a letter is the testimony of two other witnesses.   Neither its existence nor contents is• denied by Showalter.   He was careful not to deny it.   When asked specifically about it, on his examination in rebuttal, he said:   "I will state, as I stated at the former trial, if such a letter had been written it was written in regard to the Chicago, Milwaukee and St. Paul car, the car refused by the Red Jacket people."   This answer having been ruled out, for lack of foundation, he again answered that, if there was such a letter, it referred to the C. M. & St. P. car. Neither he nor any other witness says there had ever been any ngotiations between the parties, respecting that car.   He admits that the offer of purchase made in Chambers' letter, related to the Michigan Central car.   Nowhere does he say or intimate that Chambers offered to purchase the hay in the other car.   That letter, the writing of which he does not deny, could not reasonably have related to the C. M. & St. P. car.   The only specific reference to that car, in the correspondence, is found in the letter of March 2, 1910, advising Showalter of its presence at Matewan and the writer's inability to store it.   There is no proof as to when that car arrived at Matewan.   There is no evidence of an order for its delivery to Chambers.   The agent says he delivered it to Buskirk and Phillips, under instructions from the general claim agent, after he had reported it refused by the Red Jacket Coal Company.   The Michigan Central car, unloaded by Chambers and containing the hay in question, came under an order to deliver it to the same company and, if it refuse to accept, to deliver it to Chambers.   When it was tendered, the correspondence began.   It is the only car as to which an offer of $18.50 a ton was made, and, therefore, logically the only car to which rejection of the offer and the counter proposition could have applied.   That letter giving Chambers the option to purchase at $20.00 or store the hay clearly authorized him to unload it, before exercising his option, and he promptly exercised it after he had removed the hay from the car.   Until withdrawn, he could accept or reject the offer of sale.   Showalter's position is inconsistent in another respect:   He does

not claim to have sent an invoice for the hay he claims to have sold Chambers, until several days after the date on which he claims to have wired an acceptance and the date of the receipt of the letter of March 2, withdrawing the offer of $18.50. His alleged letter of March 13, takes no notice of the withdrawal. It is a response to the letter of February 24th making the offer, and ignores the letter of March 2nd.

That Chambers sold some of the hay is not necessarily inconsistent with his position and the strong tendency of the evidence to sustain it. Whether he had legal right to sell it for his charges or not, he may have thought he had, and, in that event, his sales would signify nothing as to intention at the time he took the hay into his possession. As to the time of the sales, the evidence is indefinite, but its import is that they were made several months after the hay was put in storage.

Our conclusion is that a decided preponderance of the evidence in favor of the defendant justified the setting aside of the verdict and the grant of a new trial.

Hence, the order complained of will be affirmed.

*Affirmed.*