# CHARLESTON.

### APPALACHIAN POWER CO. *v.* JAMES D. TATE.

### Submitted February 28, 1922. Decided March 7, 1922.

1. EVIDENCE—*Where Appliance is Sold by Particular Descrip- tion in Written Contract, Buyer May Not Prove a Verbal Warranty of Fitness for a Particular Purpose.*

   Where a machine or appliance is sold by a particular de- scription or designation by a contract in writing, the buyer may not prove an express verbal warranty of fitness of such machine or appliance for a particular purpose. (p. 432).

2. SALES—*There is No Warranty That Article Bought by Par- ticular Description is Fit for any Particular Purpose, Al- though the Seller Knows the Buyer Intends it for Such Purpose.*

   Ordinarily there is no implied warranty that a machine or appliance sold by a particular description, is fit for any

particular purpose, even though the seller knows at the time of the sale that the buyer intends it for such specific purpose.    (p. 432).

3.  SAME—*Machine Sold by a Particular Description is Impliedly Warranted to be a Merchantable Article of the Kind Sold.*

Where a sale of a machine or appliance is made by a particular description or designation, there is an implied warranty that it will be a merchantable article of the kind sold. (p. 433).

4.  SAME—*Buyer is Justified in Rejecting a Machine Sold by Particular Description Where it Will Not Perform the Usual Service of the Ordinary Appliance Described.*

One who buys a machine or appliance by a particular description or designation, is justified in rejecting the article tendered in satisfaction of the contract of sale, where it appears that it will not perform the service usually performed by the average or ordinary machine or appliance described in the contract of sale.    (p. 434).

Appeal from Circuit Court, Mercer County.

Action by the Appalachian Power Company against James D. Tate to recover a balance claimed upon an account for goods sold and delivered.    Judgment for the defendant, plaintiff's bill dismissed, and the plaintiff appeals.

*Affirmed.*

*McClaugherty & Richardson,* for appellant.
*Reynolds & Reynolds,* for appellee.

RITZ, JUDGE:

The plaintiff instituted this suit to recover the balance claimed upon an account for goods sold and delivered by it to the defendant, the jurisdiction in equity being sustained by an attachment sued out upon the ground that the defendant is a non-resident of the State of West Virginia.    The right to recover was denied and upon a hearing the Court below found in favor of the defendant and dismissed the plaintiff's bill, and it is to reverse this decree that this appeal is prosecuted.

The only substantial controversy arises over the right of the plaintiff to recover the purchase price of one "Isko Re-

frigerating Unit No. 20'' amounting to $332.50. It appears that on the 9th day of May, 1919, the defendant gave a written order to the plaintiff for the refrigerating machine above mentioned at the price above indicated, to be shipped by express as soon as possible and to be paid for in thirty days from date of delivery. This written order was accepted in writing by the plaintiff. It will be noted that there is no express warranty that the machine to be furnished would be fit for any particular use or would accomplish any specific purpose. It is shown, however, that at the time this order was given and accepted the plaintiff's agent warranted that the machine would furnish refrigeration for the defendant's refrigerator and would make small cubes of ice for domestic table use. Upon this order the plaintiff had the manufacturer ship a machine to the defendant, but the shipment was not made for nearly three months after the order was given. This delay in shipment is however not involved in the controversy. When the machine arrived it was received from the transportation company by an agent of the plaintiff and taken to defendant's residence where it was placed in a servant's room, without removing the original crating and packing, until the same could be installed. It seems that a part of this machine was intended to rest on the top of the refrigerator and another part consisting of coils and perhaps some other devices was intended to be placed inside the chamber of the refrigerator intended to contain the ice when the refrigerator was used in the ordinary way, and to connect the parts so placed it was necessary to bore holes through the top of the refrigerator through which pipes extended joining the part on the outside with the part on the inside of the refrigerator. The mechanical device was operated by electricity and to secure the current for this purpose it was necessary for the apparatus to be connected with the electric wires used by defendant for lighting his residence. Upon the delivery of the machine at his residence the defendant inquired of plaintiff's agent who made the delivery, who was the same agent who sold the machine to him, whom he could get to make these connections and install the machine, and this agent advised him that a certain plumber

and a certain electrician could properly do the work. Accompanying the machine were diagrams and directions for the proper installation. On the day after the machine was delivered at his residence, defendant procured the plumber and the electrician recommended by plaintiff's agent to come to his residence for the purpose of installing the machine. Upon opening the door of the room in which the machine had been stored over night, a very strong odor of gas was detected which had evidently escaped from the machine. The crating and packing were removed and the machine installed in exact accordance with the directions, but it failed to produce any substantial refrigeration or to make any ice as it was contemplated that it would. Defendant thereupon notified the plaintiff's agent of the failure of the device to function, and this agent made an examination of it. He made no criticism of the manner in which the work of installation had been done, but discovered some valves which he thought were not properly adjusted. After adjusting these valves another attempt was made to operate the machine, but without success. The plaintiff's agent then concluded that the failure upon the part of the device to operate was occasioned by an insufficient supply of gas and he undertook to secure an additional supply. He was unable to get the gas upon his order and proposed that he would substitute a machine which he was using for demonstration purposes. The defendant acceded to this suggestion and the substitution was made but with no better results than had been obtained with the first machine. After repeated attempts to get the result contemplated, the defendant refused to accept the device and so notified plaintiff's agent. Some time afterward a representative of the manufacturer appeared upon the scene and examined the machcine at defendant's residence where it still remained. According to his contention it was badly out of repair and required considerable replacements and repairs to make it a working machine. He proposed to remedy the difficulties but the plaintiff refused to employ him for the purpose and incur the attendant liability as did also the defendant, and the machine remained at

the defendant's residence without any further attempt to use it at the time this suit was brought.

The defendant challenged the right of the plaintiff to recover upon this state of facts, and in addition filed an answer in the nature of a cross-bill in which he claimed damages in the sum of one thousand dollars for injury to his refrigerator, for loss of food products on account of lack of refrigeration and for inconvenience experienced by him in his home because of the experiments conducted with the machine.

The plaintiff's right to recover depends upon the application of a few familiar principles of the law of sales. There is contained in the written order and the acceptance thereof no express warranty that the machine purchased would be fit for any particular use or would accomplish any particular purpose. There was a verbal warranty made by the plaintiff prior to or contemporaneous with the writing that the device would furnish refrigeration and would produce small cubes of ice for domestic table use. The plaintiff's agent admits this. Can we add this warranty to the written contract? If we can, the defendant's right to prevail in this suit is clear for it is admitted that the machine does not and never did meet the terms of this warranty. There is some conflict among the authorities on this question. There are some holdings to the effect that a warranty is collateral to the principal contract and may be proven by parol evidence even though the contract of sale is in writing. The better reason, supported by the weight of authority, seems to be that a verbal express warranty cannot be added to a written contract of sale. Williston on Sales, sec. 215; 23 R. C. L., Title ''Sales'', sec. 224. This is the doctrine adhered to by this Court. *Erie City Iron Works* v. *Miller Supply Co.,* 68 W. Va. 519; *American Canning Co.* v. *Flat Top Grocery Co.,* 68 W. Va. 698.

Being thus barred from considering the express verbal warranty we must determine the rights of the parties upon the terms of the written contract. It is quite well established that where one buys an article of personal property by a particular description or of a designated kind, there is

generally no implied warranty of fitness of such article for any particular purpose even though the seller knows at the time of the sale that the buyer intends it for a specific use, but there is an implied warranty that the article furnished is a merchantable article of the kind purchased, that is that it will fill the description of the article purchased. *Gorby* v. *Bridgman*, 83 W. Va. 727. Applying this principle to the case here, if the machine furnished by the plaintiff meets the description of the machine contained in the written contract, then it has fully complied therewith and is entitled to recover. If on the other hand the machine furnished was not a merchantable machine of the kind ordered, the defendant was justified in rejecting the same.

That the machine furnished answered the description contained in the written contract so far as the name is concerned there is no doubt. Was it, however, an ordinary machine of that class? Did it possess the attributes ordinarily belonging to a machine of that kind? If it did not then it did not meet the requirements of the contract. There is some evidence tending to show that the Isko Refrigerating machine will not perform the functions of refrigeration or of making ice. If this is true, then the fact that the device furnished the defendant did not make ice is not evidence that it did not correspond with the description contained in the written contract. The plaintiff, however, has introduced much evidence to establish as a fact that the Isko Machine when in proper order will produce adequate refrigeration and will make ice cubes, and as before stated, a representative of the manufacturer condemned the machine furnished the defendant because it was out of order. Of course the plaintiff, in fulfillment of its contract, could not furnish a machine answering the general dscription, but so out of order or so lacking in workmanship, as not to perform any of the functions usually performed by machines of the general class to which it belongs. Such a machine would not be a merchantable one of that class. There is evidence in support of both contentions, but it seems to us that the preponderance of the evidence is to the effect that an ordinary Isko Machine will furnish refrigeration and make ice, and it being conceded

that the one furnished the defendant will not, it follows that it does not answer the description contained in the written order, and the Court properly denied the plaintiff relief.

The plaintiff insists that the defendant's conduct has been inconsistent with his contention that he rejected the machine, that it offered to take the machine back and relieve him of any liability for its purchase price, which offer he refused. It is true, one of plaintiff's agents testifies that he proposed to the defendant that he would take the machine back for the plaintiff and cancel the claim for the purchase price, but the defendant says that this was to be also a settlement of any claims he might have for damages against the plaintiff, and that he did refuse to accept such settlement, but that he never refused to permit the plaintiff to reclaim the machine, but has been perfectly willing at all times and is still willing for it to take it and make any disposition it desires of it. The evidence of plaintiff's witness upon this question is not inconsistent with defendant's contention. He shows that he was trying to settle the controversies between the parties and that defendant was then claiming damages, and it would seem from all of the evidence that his proposition contemplated just what the defendant says it did. Of course the defendant could not be compelled to waive any claims for damages that he might have, under penalty of being charged with conduct inconsistent with his rejection of the machine.

The plaintiff contends that it is entitled to recover in any event the sum of $9.50 being the price of an electric grill furnished the defendant. The defendant admits that he received this grill but says that he is under the impression that he returned it, and enforces this contention with the declaration that it did not appear on the statement of account sent him by the plaintiff, all of the items of which he paid, except the one covering the price of the Isko Machine. It is true when testifying he stated that he would ascertain definitely when he went home whether this grill had been returned, but there is no further showing in the record in regard to it. The plaintiff did not undertake to show that

it had not been returned.  It occurs to us that the defend-
ant's statement coupled with the fact that the item was not
included in the statement of account sent him justifies the'
finding of the Circuit Court upon this question.

The defendant cross-assigns as error the action of the
Court in denying his claim for damages.  He claims that his
refrigerator was rendered practically worthless in attempt-
ing to install the machine in it, and that it was worth from
$200 to $250; that he lost a considerable quantity of veg-
etables, milk and meat for want of refrigeration; and that
he was much inconvenienced by the failure of the machine
to produce refrigeration.  That the refrigerator was slightly
injured, sufficiently appears, but it is also shown that the
damage to it can be repairied for a very inconsiderable sum,
the amount not being shown.  Under the evidence he was
not entitled to recover as damages the full value of the re-
frigerator, but, if entitled to recover at all on this account,
only the difference in the value of the same before and after
the injury to it.  What this is does not sufficiently appear
to form a basis for a recovery in his favor.  The claims for
loss of food products are uncertain and indefinite.  There
is no showing of any actual loss on this account and the
amount thereof.  The inconvenience suffered is entirely too
speculative and uncertain to form the basis of any re-
covery.  The defendant's evidence introduced in support
of his claim for damages entirely fails to establish any
reasonably certain or definite basis for such recovery.

We find no error in the decree complained of and the
same is affirmed.

*Affirmed.*