# CHARLESTON.

HARRY M. WAUGH *v.* BLUEFIELD SUPPLY COMPANY, *a Corporation*

(No. 6419)

Submitted October 1, 1929. Decided October 8, 1929.

672

*John Kee* and *James S. Kahle,* for plaintiff in error.

*McClaugherty & Lewis, H. F. Porterfield* and *Russell S. Ritz,* for defendant in error.

LIVELY, JUDGE:

This suit is for damages for breach of an alleged warranty of certain machines manufactured for excavations and removal of dirt, rocks and the like. At the conclusion of plaintiff's evidence the court struck out the evidence and directed a verdict for defendant, which was accordingly done, and plaintiff prosecutes error.

The substance of the three counts in the declaration is that defendant, fully knowing all that was required of plaintiff by a railroad construction contract, proposed and agreed that it would design, deliver and erect machines specially designed by defendant for the work required by the railway contract and with a capacity to move 50,000 yards of earth per month; and did agree and contract with plaintiff so to do for $22,772.00 under the express warranty that the machines would remove the material at a rate of 50,000 yards per month and at a cost of not more than twenty cents per cubic yard; that the machines were defective, and though properly operated by plaintiff would not remove as much as one-half of 50,000 yards and the cost amounted to fifty-five cents per yard; that he was compelled to abandon the use of the said machines, and adopt other methods of removing the materials which cost him $325,000.00 to fulfill the excavation con-

tract, whereas by the use of the drag line machines, (originally contemplated by him) he could have done the work at $185,000.00; and in this manner he was damaged by breach of the warranty in the sum of $150,000.00.

It appears that the railroad contract was awarded to Waugh, by which he agreed to make certain excavations and fills, in December, 1925. He was familiar with the drag line method designed for such work, but not with the slack line method of excavation. He began investigation of the latter method through negotiations for purchase of slackline machinery with Sauerman Bros., Inc., of Chicago, who proposed to sell him their slackline machines estimated to do the work required at a cost of nineteen cents per yard. Then it seems he got in touch with defendant, who proposed to sell him slackline machines manufactured by Street Bros. Mfg. Works, of Chattanooga, Tennessee, and in which defendant dealt, which defendant claimed would do the same work at a lesser yardage cost than the Sauerman machine. Before closing the purchase a representative of Street Bros. came to Williamson where the work was to be done, and with defendant's president, Gilkeson, conferred with Waugh on the advisability of purchasing their machines for the work. Waugh desired to see their machine in operation and went to Indiana and there inspected the machines in operation. He then wrote to Street Bros. on January 27, 1926, that as soon as the railway company instructed him to proceed with the work, he wanted two of their "outfits", being thoroughly convinced, after inspection of their equipment in Indiana, that it would do the work; but could not send in the order at that time as the right of way in connection with the channel change on the Williamson work was being held up. Waugh says that he knew defendant was acting solely as agent for Street Bros., and that Graham, the representative of the latter, was the one who explained the workings of the machine. He says he did not require defendant to put its representations and guarantees in writing because he had done business with it before that time and had confidence in it. However, he claims that Gilkeson, president of defendant company, represented to him that the machines would do

the work as required by the railroad contract, and at a lesser price per yard than any other machine not excepting Sauerman's. Waugh says he signed an order in writing for the machines but did not retain a copy, but upon request was furnished a copy (the original being misplaced) by counsel for defendant, which was dated January 5, 1926, and submitted to him by Bluefield Supply Company by............................ and accepted by............................... He says he thinks it is a copy, but could not swear that it is. He then offered it in evidence. The substance of this order is that Bluefield supply Company submitted to him a proposal of sale of two one-half yard capacity outfits (specifying them in detail), price f. o. b. $22,872.00. The price to include services of an erector to set up and start the equipment in operation. The writing closes with these words: ''It is estimated that the two outfits will have a combined capacity of 120 yards per hour, and that complete shipment can be made within four weeks.'' (Signed) ''Bluefield Supply Co. by............................ accepted by...............................''. At what date the order was accepted is not shown . It is reasonably clear that this was the writing signed by Waugh, for he says he recognizes the articles therein named as those he purchased. The machines arrived at Williamson about May 20th and were started to be set up in the latter part of July, at which time the right of way was ready for work thereon. They were installed by a representative of Street Bros., as stipulated in the order of sale.

The west slackline was started to work August 5th and the east slackline on September 17th. The machinery was not satisfactory in many ways. Delays were experienced caused by breaks and alleged imperfections in the machinery, and complaints based thereon were made to defendant, and the manufacturers. On October 11th one Sherman, representing the manufacturers, began to operate the lines on the understanding with Waugh that if he would move 50,000 yards in a month the plaintiff would bear the expense of the test, and accept the machines. Sherman operated until November 8th, and claimed he had moved the yardage called for in the test. Waugh claimed he had not done so; and the actual yardage removed was left for ascertainment by Johnson, the civil

engineer on the job representing the railway company. Johnson made measurements and reported the yardage to each. His report in detail is not in evidence. He showed the yardage moved by the west line in October as 9,625 yards and the east line as 18,526, making a total of 28,151; but it will be observed that this measurement does not state the yardage moved between October 11th and November 8th. Upon the report of the measurements by Johnson to which Sherman agreed, Waugh being present, Sherman said he was satisfied it was correct "as to the quantity of material moved" and Waugh said he was satisfied "as to the yardage actually moved". However, Sherman said he was satisfied that the machines had done what they were expected to do, and Waugh said he was satisfied they had not.

On February 8, 1927, Waugh executed notes for the machines, which he says were signed on the understanding that the merits or demerits of the machines were not to be affected thereby. Later a portion of the notes were paid, but when the fifth note became due in June following Waugh refused to pay further. At the time the notes were given defendant told Waugh that it had settled with Street Bros. for the purchase price.

Later, on April 25, 1927, Waugh wrote to defendant company saying that when he executed the purchase money notes (February 8, 1927) he did so with the understanding that Mr. Gilkeson (representing defendant) would give him a letter "guaranteeing the slackline outfits against *failures* not caused by ordinary wear and tear expected in the usage they were sold to do"; that he was then paying the third note, but unless the guaranty was given he would not continue to pay the notes; and also notifying defendants that another failure had occurred in the west tower which had been inspected by Sherman and Gilkeson. Whereupon, on April 28th, defendant replied that it would give the "guarantee' which plaintiff desired: "To use the words as suggested in your letter—we hereby guarantee the two slackline outfits in question against failure, not covered by ordinary wear and tear expected in the usage they were sold to do."

Other evidence was introduced bearing upon the damages

plaintiff had sustained by breach of the alleged warranty which will not be detailed here, for at the conclusion of the evidence, on motion of defendant, the court struck out the evidence and directed the jury to find a verdict for defendant, which was done, and plaintiff prosecutes error, alleging:

(1) That the sale was made by defendant as dealer to plaintiff of machinery specially designed and made for the work in which it was to be used, with the time in which it was to be performed and the costs per yard of performance; and therefore defendant acted as principal and not as agent and is bound by its representations and warranties; (2) That defendant expressly warranted the machinery; but if not, it is bound by implied warranty; (3) That the order in writing was not the contract, but was introduced to identify the parties and the price to be paid; (4) That plaintiff was not estopped to claim damages for breach of warranty because he executed notes for the purchase price and paid part of them long after he discovered the breach and suffered his damages; and (5) That he gave to the jury proper evidence on which to arrive at the true measure of damages.

On the other hand defendant contends (1) That the defendant acted as agent for a disclosed principal and could not be held liable even assuming there was a warranty and breach; (2) That the contract of sale was reduced to writing which contains no warranty and parol evidence to show express warranty was not admissible; (3) That there is no implied warranty that the equipment was fit for the purpose intended; (4) That plaintiff is estopped because he executed the notes and paid part of them after he had knowledge of the alleged breach, and after he knew that defendant had paid to the manufacturer its purchase money; and (5) That he has not shown properly the true measure of damages. The proposition of law relied upon by the parties are the converse of each other.

On the proposition that defendant as agent only of a disclosed principal was not bound even if there was a warranty and breach, we observe it is true that Waugh says he knew defendant was an agent, but that is his conclusion only. Agency is the result of facts, and here it is shown that de-

fendant sold the machines and took notes from Waugh in payment after having settled its obligation with Street Bros. We find no evidence of the agreement between defendant and Street Bros. On the contrary, the evidence indicates that defendant was a dealer, and purchased the machines from the manufacturers for resale to plaintiff. A contractual relation existed between plaintiff and defendant, and not between plaintiff and Street Bros. through the agency of defendant. It may be that the relation between defendant and Street Bros. was a mere agency, and the machines were sold by the former on commission, but that does not satisfactorily appear from this record. It must be remembered that the motion to strike the evidence as insufficient places defendant in the position of a demurrant, and all reasonable inferences in favor of plaintiff must be accorded him. Street Bros. were disclosed as manufacturers of the machines, but it does not necessarily follow that they were the disclosed principals and were selling direct to plaintiff through the agency of defendant. Moreover it is very well established that an agent may bind himself along with his principal when he enters into contractual relations with a third party. *Lutz* v. *Williams*, 79 W. Va. 609, 614, and cases there cited.

On the proposition that the evidence relating to the alleged warranty of capacity of the machines and the costs per yardage (the only warranty sued on) was inadmissible; we find that there was a contract in writing evidencing the sale dated January 5, 1926. There is no warranty expressed in this writing. It is quite well established by our decisions that where the sale is evidenced by a writing and no warranty is contained therein, a verbal warranty cannot be ingrafted thereon by parole evidence. *Appalachian Power Co.* v. *Tate*, 90 W. Va. 428; Williston on Sales (2nd Ed.), p. 414, sec. 215. To avoid this principle of law of sales plaintiff argues that the writing is ambiguous on its face, and therefore parol testimony is admissible to amplify it and show the true intent and meaning. It may be observed that the writing is not ambiguous as to warranty of capacity of the machines; on the contrary it negatives such warranty by express terms. It says: ''It is *estimated* that the two outfits will have a capacity

of 120 yards per hour.'' Can parol testimony be received to show a guarantee of capacity? Such evidence would contradict the writing. It is universally held that a writing which is plain and unambiguous cannot be changed by verbal testimony. This writing may be ambiguous in other respects but not so as respects the capacity of these machines, the crucial matter involved under the declaration. Implied warranty is not the basis of this action. It is confined to an express verbal warranty of capacity. Taking this writing alone, we would unhesitatingly affirm the ruling of the trial court; but we are confronted by a supplementary writing by which defendant gave an express warranty in which it says: ''We hereby guarantee the two slackline outfits in question against failure, not covered by ordinary wear and tear in the usage they were sold to do.'' What is meant by ''failure''? It is argued by defendant counsel that ''failure'' meant a failure to remove any dirt, a failure to function, and that defendant warranted the machines in that regard; and therefore that warranty not being sued on, parol testimony was not admissible. It is by no means clear what was meant by the word ''failure'' as used by both of the parties, under the circumstances of the case and their situations. What interpretation the jury would have given it under proper instructions is chimerical. In view of the uncertainty of the meaning of this written guarantee considered in connection with that of January 5, 1926, we hold it was error to take the meaning from consideration by the jury. Citation to authority for the proposition that verbal testimony is admissible to explain an ambiguous writing would be superfluous.

On the proposition that plaintiff was estopped by reason of having executed notes after his damage had accrued, it appears that he gave these notes with the express understanding (and his version is not contradicted) that he would not be precluded thereby from his rights by reason of the failure of the machines. That understanding and condition, if true, would prevent estoppel.

On the assignment that the evidence affords no yardstick by which the jury could assess damages, we refrain from a discussion, as it is evident that some damages have been sus-

tained by plaintiff if his theory of the case be tenable which the trial court could have conserved by appropriate instructions; and further, because upon a new trial defendant will have ample opportunity by objection and exception to conserve his rights in that regard.

The verdict and judgment of *nil capiat* will be set aside and a new trial awarded.

*Reversed; verdict set aside;*
*new trial awarded.*