Jack L. Nettles and Frances Nettles

*v.*

Imperial Distributors, Inc.

(No. 12637)

Submitted September 20, 1967.    Decided January 16, 1968.

10

BROWNING, JUDGE, dissenting.

*Charles W. Caldwell,* for appellants.
*Kay, Casto & Chaney, George S. Sharp,* for appellees.

CALHOUN, JUDGE:

This case involves an action instituted in the Court of Common Pleas of Kanawha County by Jack L. Nettles and Frances Nettles, husband and wife, as plaintiffs, against Imperial Distributors, Inc., (and against two other corporations which were dismissed as defendants before the case was tried), for recovery of damages for personal injuries and property damage caused to the plaintiffs as a consequence of an explosion of a natural gas cooking range or stove which was a part of a mobile home, known as a Concord Mobile Home, purchased by the plaintiffs on or about April 25, 1963, from Imperial Distributors, Inc., the defendant, a retail dealer engaged in the sale of mobile homes of that make and character at Charleston, West Virginia.

The plaintiffs sued jointly for breach of contract and for damages caused to the mobile home. Frances Nettles sued for recovery of damages for personal injuries sustained by her. Jack L. Nettles sued for recovery of medical expenses incurred by him in connection with the treatment of his wife's personal injuries and for the consequent loss of her services.

The jury returned a verdict for $1,000 for the plaintiffs on their joint claim for damage to the mobile home; a verdict in favor of Frances Nettles in the sum of $3,500 and a verdict in favor of Jack L. Nettles for $500. Judgments were entered on these several verdicts by the trial court against Imperial Distributors, Inc.

On appeal by the defendant to the Circuit Court of Kanawha County, sitting as an intermediate appellate court, the judgments were reversed, the verdicts were set aside, and the case was remanded to the court of common pleas for a new trial on certain issues specified in a written opinion of the circuit court which was made a part of the record. From that judgment of the circuit court, the plaintiffs have been granted an appeal to this Court. The case has been submitted for decision on the record and upon written briefs and oral argument of counsel.

The circuit court reversed the judgments rendered in the trial court solely because of the giving of Plaintiffs' Instruction No. 1, as amended, over the objection of the defendant. From the briefs and oral argument of counsel, we are of the opinion that the action of the trial court in giving that instruction involves, in the main, the legal questions presented for decision on this appeal. Generally speaking, the questions presented for decision on this appeal involve the application, on the facts of this case, of legal principles pertaining to implied warranties, the doctrine of caveat emptor and the parol evidence rule. Similar questions were presented by instructions offered in behalf of the defendant and refused by the trial court. Plaintiffs' Instruction No. 1, as amended, is as follows:

> "The Court instructs the jury that in the sale of personal property there is an implied warranty that the article furnished is a merchantable article of the kind purchased, and if you find from the evidence in this case that there was a missing adapter or an open gas pipe in the oven of the stove of the trailer sold by the defendant, Imperial Distributors, Inc., to the plaintiffs, then such defect was a breach of the implied warranty. And if you find from a preponderance of the evidence that as a direct and proximate result thereof the plaintiff, Frances Nettles, received the injuries testified to in this case, then you may return a verdict for her for the injuries and damages sustained by her, unless you should also find that she was guilty of some negligence that contributed proximately thereto, but not to exceed the sum of $50,000.00, the amount named in the complaint filed herein."

The trial court also gave, over defense objection, Plaintiffs' Instruction No. 2, as amended. The chief objection to this instruction is that it violates the parol evidence rule. The instruction is as follows:

> "The Court instructs the jury that if you believe from a preponderance of the evidence in this case that the agent or agents of the defendant, Imperial Distributors, Inc., advised the plaintiffs that the trailer sold by said defendant to said plaintiffs was a completed package, or was ready for use or had

been checked out, or words of similar meaning, or that the plaintiffs did not have to do anything before using it, then you are further instructed that the plaintiffs had a right to rely on such statements and representations. And if you find that the plaintiff, Frances Nettles, was injured by reason of the defect in the stove, such as the missing adapter, then you may return a verdict for her for the injuries and damages suffered by her, as testified to in the case, unless you shall further believe from a preponderance of the evidence that plaintiff, Frances Nettles, was guilty of negligence proximately causing or proximately contributing to her said injuries."

The mobile home, also referred to in the case as a trailer or as a house trailer, was sold to the plaintiffs by a conditional sales contract dated April 25, 1963, which recites a total purchase price of $6,822.20 and a cash down payment of $2,000, the balance of the purchase price being payable in monthly installments of $80.37 each. The conditional sales contract contains the following language: "* * * together with all equipment and accessories thereon and therein, all of which are included in the term 'vehicle' as used herein, * * *." The conditional sales contract was completed by typing certain facts and figures in a printed form. It contains no express warranty of any sort. While the mobile home includes various items of "equipment and accessories", including the natural gas cooking stove, none of such items is referred to or described specifically or referred to expressly in the contract.

The complaint, as amended, alleges the terms of the contract; that the defendant "by its agents, at the time of said sale stated to the plaintiffs and covenanted and warranted with the plaintiffs that said trailer was a completed product; that the only thing the plaintiffs had to do was to move into it, and that it would be checked out for complete use by the plaintiffs without any further inspection or examination." The complaint further alleges "* * * that on the 7th day of May, 1963, after the defendant had located said trailer and advised the plaintiffs that they could move into it, the plaintiffs went to the trailer, turned

on the gas valve on the outside of the trailer, the connections all having been made by the defendant, and lighted the burners on top of the stove. A moment or two thereafter there was an explosion, the stove being blown apart, the explosion being caused by the failure of the defendant to make proper connections of the gas fittings in the oven of the stove, that is, the gas line feeding to the burners of the oven was not connected and there was entirely absent from the stove at this gas line connection a small adapter, which was necessary to connect the gas pipe leading to the burners of the oven, and as a result of this gas line not being connected and in the absence of the adapter, the gas in the oven exploded from gas flames of the burners on top of the stove, and as a direct and proximate result of the negligence and wrongful acts of the defendant, * * *", plaintiffs sustained the damages for which they seek recovery.

Before a contract of sale and purchase was consummated, the plaintiffs went into eight or ten house trailers where they were kept or displayed by the defendant, and finally selected the one in question. While the plaintiffs went inside the trailer in question before they entered into the written contract, it is obvious, we believe, that a jury would be warranted in finding from the evidence that their inspection of the trailer, particularly of the stove, though not minute, was normal and reasonable. Mrs. Nettles testified that she opened the oven door of the stove. It is obvious from the testimony of Mr. Nettles that he relied largely on his wife for such inspection as was made of the inside of the trailer. In that connection, he testified that if she wanted it, "that is what we were going to get."

Mrs. Nettles testified that, in connection with the negotiations leading to the execution of the contract, the defendant's salesman stated that "they would deliver it and set it up and check it out and all we had to do was move in and he said they stood behind them." Both Mr. Nettles and his son testified that similar representations, agreements or warranties were made to the plaintiffs by agents of the defendant before the contract was consummated.

We are of the opinion that testimony of this character was clearly violative of the parol evidence rule and that for this reason the giving of Plaintiffs' Instruction No. 2 constituted reversible error.

For a general statement of principles relating to the parol evidence rule, see *Wyckoff* v. *Painter*, 145 W. Va. 310, 115 S. E. 2d 80. In line with the general rule, this Court has held that where a chattel is sold by a written contract, parol evidence is not admissible to prove a prior or contemporaneous express warranty which is not expressed in the writing. *Appalachian Power Co.* v. *Tate*, 90 W. Va. 428, pt. 1 syl., 111 S. E. 150; *Erie City Iron Works* v. *Miller Supply Co.*, 68 W. Va. 519, pt. 2 syl., 70 S. E. 125. The same rule has been applied in relation to a deed for the sale of real estate. *Leckie* v. *Bray*, 91 W. Va. 456, pt. 5 syl., 113 S. E. 746. "Where personal property is sold under an express warranty, there can be no implied warranty inconsistent with that expressly made." *Hill et al.* v. *Montgomery Ward & Co.*, 121 W. Va. 554, pt. 1 syl., 4 S. E. 2d 793.

While the alleged oral warranties or representations by the defendant made prior to or contemporaneously with the execution of the written contract were inadmissible under the parol evidence rule, it does not necessarily follow that there was no implied warranty in relation to the stove. "An implied warranty may arise under a written contract as well as under an oral contract." 77 C.J.S., Sales, Section 317, page 1164. "The fact that a contract of sale is in writing does not necessarily exclude warranties implied by law. This fact does not preclude the implication of a warranty not inconsistent therewith. Whether in the case of a written contract of sale there is an implied warranty of quality or fitness should be decided in the light of the circumstances attending the transaction. * * *." 46 Am. Jur., Sales, Section 333, page 515.

Ernest Litton was employed by the defendant to go to the plaintiffs' premises and to place the trailer on cinder blocks. It is contended in behalf of the defendant that statements alleged by plaintiffs' witnesses to have been made by Litton, at that time and place, to the effect that he had

checked out the trailer and that it was ready for occupancy, constituted warranties which were not made in the conditional sales contract; which, therefore, were violative of the parol evidence rule; and that, for this additional reason, the trial court erred in giving Plaintiffs' Instruction No. 2. We do not agree with this contention.

It may be that the defendant was not bound by any contract, oral or written, to transport the house trailer to the place designated by the plaintiffs at Quick, West Virginia, there to locate it properly on cinder blocks, to make various repairs and adjustments within the trailer, and to "check it out" so that it was ready for occupancy as soon as a natural gas connection was made at a place prepared and left for that purpose on the outside of the trailer. The jury was justified, nevertheless, in finding from the testimony that the defendant, by its agent, made statements and assurances to the plaintiffs that all needful checking had been made inside the trailer so that it was safe for use and occupancy by the plaintiffs.

The plaintiffs are not undertaking in this respect to enforce a parol contract. Nor are the plaintiffs seeking to enforce an express oral warranty of the trailer or the stove purchased by them. They merely claim that, in good faith, they relied on the assurance of the defendant's agent, Litton, that the trailer had been inspected and checked out and that it was ready and safe for immediate occupancy. The plaintiffs assert, not that the defendant failed to perform any written or oral contract or warranty made by it or in its behalf, but rather that the defendant, by its agent, negligently led the plaintiffs to rely on assurances that the trailer had been checked out and that it was ready for occupancy without need for further inspection or checking by the plaintiffs or by anybody else.

The circuit court, in its opinion, stated that it was not error for the trial court to refuse to direct a verdict for the defendant "in view of the evidence in this case bearing on the express representations of the defendant, and its negligence in the preparation of the trailer for occupancy. * * *." We agree with the circuit court in that respect.

The defendant perhaps was not required, certainly not by the conditional sales contract, to transport the trailer to Quick, to place it on cinder blocks, or to check or to prepare the trailer for occupancy. As a matter of fact, however, according to credible evidence, it actually did so, and the jury was justified in finding that the defendant, by its agent, negligently induced the plaintiffs to undertake the occupancy which, in the normal course, proximately caused the personal injuries and property damage which form the basis of the civil action instituted by the plaintiffs.

Counsel for the defendant rely upon 46 Am. Jur., Sales, Section 805, page 930, and certain other authorities for the proposition that a retailer who purchases a chattel from a reputable dealer is under no duty to inspect or test the chattel for a latent defect. We consider that proposition inapposite for the reason that the plaintiffs' claim of negligence is not based upon the failure of the defendant to inspect the stove before it was sold. Rather, as previously stated, the plaintiffs' claim of negligence is based upon the alleged representation of the defendant's agent that he had checked the trailer and that it was ready for occupancy by the plaintiffs.

After the house trailer was placed at the designated location, Jack L. Nettles connected an outside natural gas line or pipe with a fitting or connection located on the outside of the trailer which was made and intended for the purpose of making gas available for use in the stove. There is no contention that this connection was made improperly or negligently by Nettles.

After the gas connection was made from outside the trailer, the plaintiffs went into the trailer and undertook to light the burners on the natural gas cooking stove by lighting the jets on the four burners, and immediately there resulted a violent explosion which directly and proximately caused the personal injuries and property damage complained of.

It is undenied and undisputed that the explosion was caused by the absence of a certain part of the stove mech-

anism which was known as an adapter and which was indispensable to the proper and safe operation of the stove. The adapter was a small pipe or tubing, two or three inches long, which was designed to carry gas from a connection of a certain diameter into and through a connection of a smaller diameter, and thence to the oven and burners of the stove. Immediately after the explosion, Jack L. Nettles went outside and turned off the flow of gas where it entered the trailer.

A jury would be warranted in finding from the evidence, that the location of the adapter, or its absence, was by no means discernible from a normal or reasonable examination or inspection of the trailer or of the stove by the plaintiffs. The son of the plaintiffs testified that, by use of a flashlight, he could look through a one and one-half or two-inch opening in the stove and by this means determine the absence of the adapter. Jack L. Nettles gave similar testimony, and stated that the proper location for the adapter was discernible only with the aid of artificial light by looking through "a small crack" about an inch or slightly more in width. He testified that the proper location of the adapter was two feet, more or less, from the front of the stove. The testimony of Jack L. Nettles and his son in relation to the proper location of the adapter was undisputed and was substantiated by photographs made with the aid of artificial lights and introduced in evidence. It is undisputed that the presence or absence of the adapter could be determined only by carefully looking in the narrow crack or opening in the stove, and even then only with the aid of an artificial light, such as a flashlight or a floodlight. The presence or absence of the adapter could not be discovered, even with the aid of an artificial light, by a person in a standing position. An inspection or opportunity for inspection does not necessarily preclude an implied warranty against defects which cannot be revealed by a reasonable inspection. 77 C.J.S., Sales, Section 315b, page 1158.

The Uniform Commercial Code (Chapter 46, Articles 1-10, inclusive, Code, 1931, as amended), was made a part

of the law of this state by the enactment of Chapter 193, Acts of the Legislature, Regular Session, 1963. The Act was made effective as to transactions entered into and events occurring after its effective date, July 1, 1964. Inasmuch as the contract involved in this case was entered into prior to that date, the circuit court quite properly undertook to apply to the case the law of this state as it existed prior to July 1, 1964.

The judgments of the trial court were reversed by the circuit court by applying adversely to the plaintiffs principles relating to implied warranties and the doctrine of caveat emptor. The circuit court referred to five principles quoted in *Hood* v. *Bloch*, 29 W. Va. 244, 252-253, from *Jones* v. *Just*, L. R. 3 Q. B. 197 (1868). The same five principles were quoted in *Schaffner* v. *National Supply Co.*, 80 W. Va. 111, 118-19, 92 S. E. 580, 583-84. The circuit court, quoting from *Watkins* v. *Angotti*, 65 W. Va. 193, 198, 63 S. E. 969, 971, referred to the second of the five principles which is stated in the sixth point of the syllabus of *Hood* v. *Bloch*, 29 W. Va. 244, as follows: "But where the sale is of a definite existing chattel, specifically described, the actual condition of which is capable of being ascertained by either party, there is no implied warranty."

The chattel directly involved in this case was a stove and it was not "specifically described" in the written contract. A jury would be justified in finding that common sense would be severely strained by an assertion that the absence of the adapter in this case was "capable of being ascertained" by the plaintiffs, or either of them, by a normal examination or reasonable inspection.

The circuit court also cited *Erie City Iron Works* v. *Miller Supply Co.*, 68 W. Va. 519, 70 S. E. 125, and *Showalter* v. *Chambers*, 77 W. Va. 720, 88 S. E. 1072, for the holding stated in its opinion as follows: "The rule excluding implied warranties from sales of goods *in esse,* where the purchaser is given the opportunity to inspect, in the absence of fraud, appears to be well established in this State. * * *." Certainly it cannot be said that the adapter was "in esse", though it was an essential component part of the

stove and, therefore, necessarily contemplated by the contract of sale and purchase. In the *Erie* case the first point of the syllabus is as follows: "Though the vendor of an article knows it is intended for a particular use or purpose, the sale thereof carries no implied warranty of fitness for such purpose, *if the purchaser has seen and inspected the article and secured just what he contracted for.*" (Italics supplied.) The third and fourth points of the syllabus of the *Showalter* case are as follows:

"3. Delivery of *ordinary merchandise* to the vendee, under a contract effected by an offer of purchase, *after an inspection of the goods, or an opportunity to inspect them,* accepted by the vendor, passes the title and makes the contract an executed one. (Italics supplied.)

"4. In such a sale, there is no implied warranty of quality or merchantableness."

Similar authorities are relied upon by the defendant on this appeal.

We believe the instant case, in relation to principles governing implied warranties and the caveat emptor doctrine, is factually distinguishable from all prior decisions of this Court which have been called to our attention. First and foremost among these distinguishing characteristics, we believe, is the fact that this case does not involve a merely defective chattel or a merely defective part of a chattel involved in a sale and purchase. The plaintiffs contracted for the purchase of a stove, but only part of the stove was delivered to them for their immediate use. The case does not involve a merely defective adapter. Rather it involves the absence of an adapter, without which there was no complete, whole and operable stove. Implicit in the sale of the stove, we believe, was an implied warranty that the stove was a whole, complete stove, including an adapter, without which the stove could not perform the function for which it was sold and purchased, and without which resulting harm to the purchasers and to the trailer was almost an absolute certainty.

An unusual feature of this particular case is the fact that the operation of the stove required the use of natural gas,

a substance which, by common knowledge, is highly flammable, potentially explosive and consequently of a dangerous nature. Reason dictates that the rights and responsibilities of the parties to a contract such as that involved in this case should, in some degree at least, be measured by the nature of the chattel sold and delivered to the purchasers.

> "The common-law states and those jurisdictions having either the Uniform Sales Act or the Uniform Commercial Code as their basic sales law * * *, concur in holding that buyers are precluded from recovery for breach of warranty where a reasonable inspection would have revealed the defect in the injury-causing product. A few of the decisions seem to go further, suggesting that the doctrine of *caveat emptor,* buyer take care, may still have some vitality, particularly in those situations where the buyer has or should have knowledge equal to that of the seller concerning a product's defect. Such decisions have, however, involved products which can only be characterized as ordinarily innocuous. * * *." CCH Products Liability Reporter, Paragraph 1180.

The case is unusual because of the fact that the defect in the stove, arising from the absence of an adapter, was discoverable only by a minute inspection with the aid of artificial light. The case is unusual for the additional reason that a jury would be warranted in finding that a recognition of the defect in the stove arising from the absence of an adapter required a certain mechanical or technical knowledge not expected to be possessed by the average purchaser of a mobile home.

We recognize the need for consistency and predictability in judicial decisions and the importance of adherence to sound precedents. We do not hesitate to state, however, that judicial pronouncements made in 1868 in *Jones* v. *Just, supra,* involving a contract for the sale of hemp, are not necessarily appropriate to the decision a century later of a case involving the sale of a natural gas cooking stove. While the provisions of the Uniform Commercial Code are not applicable to this case, we consider it reasonable to

state that the adoption of that Code by the legislature of this state, and by legislatures of a great majority of the other states of the nation, demonstrates that anciently conceived principles relating to implied warranties should be reasonably extended, and that similarly conceived principles relating to the doctrine of caveat emptor should be reasonably restricted in scope in the light of the vast change in the nature of chattels commonly sold and purchased in this day. We are not undertaking in this case to change legal principles heretofore recognized and adhered to by this Court. We are merely undertaking to apply such principles reasonably and justly to the peculiar facts of this case.

"The maxim 'caveat emptor' was formerly of more general application than now, and there is considerable authority in support of the view that the doctrine of implied warranty should be extended rather than restricted. It has been said that the tendency of all the modern cases on warranty is to enlarge the responsibility of the seller and frequently to imply a warranty on his part from acts and circumstances, wherever they were relied upon by the buyer, and that the maxim 'caveat emptor' seems gradually to be restricted in its operation, and limited in its dominion, and beset with circumvallations of the modern doctrine of warranty, until it can no longer claim the empire over the law of sales, and is but a shadow of itself. Indeed, it has been suggested that the doctrine 'let the buyer beware' should have no higher place than the companion doctrine 'let the seller beware.' On the other hand, it has been stated that although there has been a great change in the meaning of the maxim 'caveat emptor,' caveat venditor is not the law if by it is intended anything more than that it is the seller's duty to do what the ordinary man would do under the circumstances.

"The present application of the doctrine of caveat emptor is further limited by reason of the facts that a warranty is made not only where it is made in terms or in so many words, as by the use of the words 'I warrant,' but also where, although such explicit words are not used, the intent to warrant may be inferred or implied in fact and that the

courts seem increasingly more inclined to make such an inference." 46 Am. Jur., Sales, Section 339, page 522. See also 77 C.J.S., Sales, Section 315c, page 1160.

Counsel for the defendant quite properly assert that if the plaintiffs had desired warranties, they could have required that such warranties be expressly stated in the written contract. On the other hand, if the defendant had desired to protect itself against warranties reasonably to be implied in the circumstances, the defendant could have insisted that the writing expressly exclude implied warranties. *Payne* v. *Valley Motor Sales, Inc.*, 146 W. Va. 1063, pt. 1 syl., 124 S. E. 2d 622. The fact remains that the parties entered into a written contract which is silent on the subject of warranties. They have in this respect left the courts free to determine, without violation of the parol evidence rule, whether, in the circumstances and from a legal standpoint, a warranty of merchantability was implied in the transaction in question.

We are of the opinion that the circuit court erred in holding that there was no implied warranty of merchantability in this case and that, for that reason, Plaintiffs' Instruction No. 1, as amended, was improperly given by the trial court. The instruction told the jury that, if they found from the evidence that the adapter was "missing" or absent from the stove, "such defect" constituted a breach of an implied warranty of merchantability. We believe that, in the circumstances of this case, the instruction stated a correct proposition of law. We do not mean to imply that the instruction was or was not technically free from objection in all respects.

Though the circuit court did not feel called upon under the circumstances to pass upon the correctness of Plaintiffs' Instruction No. 2, the correctness of the instruction has been sufficiently challenged by cross-assignment of error in the brief of counsel for the defendant, pursuant to Rule XI of the Rules of this Court. We are of the opinion, as we have previously stated, that the instruction was erroneously given in violation of the parol evidence rule.

For reasons stated in this opinion, the judgment of the Circuit Court of Kanawha County is reversed in its holding that it was error to grant Plaintiffs' Instruction No. 1, but is affirmed in its action in remanding the case to the Court of Common Pleas of Kanawha County for a new trial, which trial shall be in accordance with legal principles stated in this opinion.

*Reversed in part;*
*affirmed in part;*
*new trial awarded.*

BROWNING, JUDGE, dissenting:

I dissent. Deferentially and respectfully but, I must admit, with a certain degree of impatience, do I find myself in disagreement with my three judicial brethren in that part of their decision in which they reversed the Judge of the Circuit Court of Kanawha County sitting as an intermediate appellate court wherein, upon a solid line of decisions of this Court, he reversed the trial court in its holding that the plaintiffs could recover on the theory of a breach of an implied warranty upon the facts in this case. I am in agreement with the action of this Court in affirming the intermediate trial court wherein he held that the plaintiffs could recover in tort if they could produce evidence to make such a recovery possible.

The evidence herein is undisputed that the plaintiffs on more than one occasion examined the mobile home trailer before they purchased it and that, from the nature of the article purchased and the defect therein which later caused the injury to plaintiff Frances Nettles, the condition was discoverable as easily by the plaintiffs as by the defendant. In *Hood* v. *Bloch Brothers*, 29 W. Va. 244, 11 S. E. 910, this Court in quoting from *Jones* v. *Just*, L. R. 3 Q. B. 197, held that: "First, where goods are *in esse* and may be inspected by the buyer, and there is no fraud on the part of the seller, the maxim, *caveat emptor*, applies even though the defect which exists in them is latent and not discoverable on examination, at least where the seller is neither the grower nor the manufacturer. . . . In such case, it is not an implied term of the contract of sale that the

goods are of any particular quality or are merchantable.
. . ." The rule excluding implied warranties from sales
of goods *in esse,* where the purchaser is given the oppor-
tunity to inspect, in the absence of fraud, is firmly estab-
lished in this state. *Showalter* v. *Chambers,* 77 W. Va. 720,
88 S. E. 1072; *Erie City Iron Works* v. *Miller Supply Co.,*
68 W. Va. 519, 70 S. E. 125; and *Watkins* v. *Angotti,* 65 W.
Va. 193, 63 S. E. 969.

The following decisions by this Court holding that there
was an implied warranty are clearly distinguishable from
the cases heretofore cited and stand for the proposition
that such implied warranty arises only "where one buys
an article of personal property by a particular description
or of a designated kind.": *Millenson* v. *Lamp,* 99 W. Va.
539, 130 S. E. 137, 48 A.L.R. 967; *Appalachian Power Co.* v.
*Tate,* 90 W. Va. 428, 111 S. E. 150; and *Schaffner* v. *National
Supply Co.,* 80 W. Va. 111, 92 S. E. 580.

It is observed that the majority has placed its stamp
of approval upon this portion of plaintiffs' instruction No.
1, as amended, which was given by the trial court: "The
Court instructs the jury that in the sale of personal property
there is an implied warranty that the article furnished is
a merchantable article of the kind purchased, and if you
find from the evidence in this case that there was a missing
adapter or an open gas pipe in the oven of the stove of the
trailer sold by the defendant, Imperial Distributors, Inc.,
to the plaintiffs, then such defect was a breach of the
implied warranty. . . ." How this Court can approve such
an instruction and not overrule several pertinent decisions
of this Court has never been made clear to me either in
the conference room of this Court or in the opinion of
the majority.

The ingenuity of a judge of a high court whether he
sits beside the Kanawha, the Potomac or the Wabash, when
he sets out to "distinguish upon the facts" a case under
consideration from previous decisions of his court which
are totally indistinguishable is something to behold. To
my mind, it is pure sophistry to say that the fact that the
part of the stove called an "adapter" was negligently not

inserted by the manufacturer rather than being defective distinguishes this case from the previous decisions.

The manufacturer of the mobile home is not a defendant in this case, apparently because of the recent decision of this Court in the case of *Payne* v. *Valley Motor Sales, Inc.*, 146 W. Va. 1063, 124 S. E. 2d 622. Upon the authority of that case the only relief which the plaintiffs would have against the manufacturer, assuming the existence of an express warranty similar to that in the *Payne* case, that is, an express warranty negating any implied warranties and limiting the liability of the manufacturer to the replacement of the defective part regardless of any personal injury, damage or destruction of the entire article occasioned by reason of the defectiveness of such part, would be to demand replacement or supply of the missing adapter. Does this decision of this Court therefore mean that hereafter, while the real culprit, the manufacturer, escapes liability by virtue of an extremely limited express warranty, that all retailers who sell automobiles, mobile homes, and all manner of gas and electric appliances shall, under the penalty of being liable in contract by way of an implied warranty, be forced to employ numbers of expert mechanics to disassemble every such appliance or machine to ascertain if there are latent defects before offering the same for sale? It may well be that these legal principles which this Court has applied to cases involving warranties, both express and implied, are anachronistic in the light of the complicated technical advances of the present day and the consequent unproductive examination of an intricate article of machinery or appliance by an untrained prospective purchaser who knows no more after examination than he did before. If the majority would agree, I would review and reconsider our past decisions in this light and, to the extent necessary, formulate new principles commensurate with present day commercial practicalities. However, I have never considered the terms *stare decisis* and retrospective judicial infallibility as being synchronous and it is my view that if the Court is to overrule a long line of cases, which I believe to be directly in point, it should do so by direction and not by indirection.

I would affirm the decision of the Judge of the Circuit Court of Kanawha County sitting as an intermediate appellate court in toto. I am authorized to say that Judge Haymond joins in the views expressed in this dissent.