# CHARLESTON.

## VANCE v. ELLISON *et al.*

### Submitted May 5, 1915. Decided June 22, 1915.

1. EVIDENCE—*Parol Evidence Affecting Writings—Contemporaneous Oral Contract.*
   A verbal contract covering the subject dealt with in a written contract entered into between the same parties as the time the verbal one is made, can not be established. (p. 595).

2. CONTRACTS—*Consideration—Performance of Legal Obligation.*
   The doing of what one is already legally bound to do can not constitute good consideration for a promise made to him. (p. 595).

3. ATTORNEY AND CLIENT—*Compensation—Additional Compensation.*
   A court of equity will cautiously scrutinize a contract for addi-

tional compensation obtained by an attorney from his client after the relation between them is once established, and will frequently interfere, at the election of the client, to prevent the enforcement of such a contract or to restore to him what has been obtained thereunder. (p. 596).

4. MORTGAGES—*Injunction—Invalid Debt.*
　Equity will enjoin. the enforcement of a deed of trust given to secure payment of money under a contract which is invalid. (p. 598).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Logan County.

Suit by James M. Vance against J. B. Ellison and others. Decree for defendants, and plaintiff appeals.

*Reversed, and decree rendered for plaintiff.*

*Maynard F. Stiles,* for appellant.

*Ira P. Hager* and *E. T. England,* for appellees.

ROBINSON, PRESIDENT:

By this suit in equity Vance sought to enjoin Ellison and others from the enforcement of a deed of trust on real estate, which had been given to secure the payment of fees for legal services. Plaintiff rested his claim for relief on the ground that no valid consideration supported the contract to pay; that the contract was one not enforceable as between attorney and client; and that in. any event the services had not been performed. Upon the bill, answer, and proofs the court denied the relief asked, and plaintiff has appealed.

We shall by no means go into all the matters disclosed by the record. Those which control decision are marked and suffice for attention.

Vance contends that the deed of trust, which is for eight hundred and sixty dollars, covers the unpaid part of a contingent fee of one thousand dollars for legal services to be rendered him by Ellison in the case of the Buffalo Coal Company v. Vance and others. He claims that Ellison obtained the contract for this fee from him after the relation of attorney and client was established between him and Ellison, and after the latter was already bound in a prior written con-

tract to render him the same services for an absolute fee of
five hundred dollars. Vance maintains that, Ellison having
become his attorney, the contract for the additional com-
pensation is one which a court of equity will not countenance;
that, Ellison being already bound by the original contract to
render the services, there was no consideration for the addi-
tional contract; and that whether there was consideration or
not, Ellison neglected to render the services he agreed to
render, so that it was necessary to employ other lawyers.
Ellison admits that the one thousand dollar fee was additional
to the other fee, but says it was verbally contracted for at
the time he was employed and the other fee stipulated, though
the written contract for the additional fee is dated about a
year thereafter. He maintains that Vance at the time of the
original employment in the case willingly and fairly con-
tracted to pay him this additional, contingent fee of one
thousand dollars, and both fees only represent fair compensa-
tion for the services covered by the agreements of employ-
ment. He denies that he neglected the case or failed to render
the services.

Vance stipulated to pay Ellison the original five hundred
dollar fee in a written contract whereby Ellison and another
lawyer, Avis, agreed to render for Vance all legal services
necessary to a full defense of the suit, both in the circuit
court and in the appellate court. That contract on its face
plainly covered the entire subject of the employment of
Ellison as an attorney in the case. By it he clearly bound
himself to render all services necessary to a defense of the
suit on behalf of Vance, even on appeal. By its written
stipulations he agreed as a lawyer to see Vance through the
litigation, for five hundred dollars. Nothing is said in it about
any additional fee to Ellison. The express terms of the con-
tract negative any other contract covering or relating to the
same subject. Though Avis was also a party to the contract,
yet in a sense it is separable as to both Ellison and Avis. They
were not law partners. Each by the written contract of
employment agreed to act in the litigation fully to its termina-
tion as far as was necessary in Vance's behalf, and each was
separately to have five hundred dollars for his services.

Vance insists that the written contract for the additional

fee of one thousand dollars, dated about a year after the
Ellison-Avis contract, represents no prior verbal contract for
such additional fee; that it was made long after the original
contract of employment; and that it was extorted from him
by Ellison's threat to throw down the case unless the addi-
tional compensation was forthcoming.   On the issue in this
relation we have only the testimony of Ellison and Vance, the
testimony of the one in direct conflict with that of the other.
But our view of the case makes further consideration in this
behalf unnecessary.

We are clearly of the opinion that Ellison's parol testimony
that a verbal contract for the additional fee was made con-
temporaneous with the written Ellison-Avis contract, is sub-
ject to the exception taken to it and can not be read.   The
express terms of the written contract whereby Ellison agreed
to render all legal services in the case for five hundred dollars,
so clearly bars intention of the parties to have any other con-
tract at the time for additional compensation, that we can not
under a well established rule hear parol evidence of other
negotiation of the parties at the time, than that expressed
by the writing.   As between Ellison and Vance the written
contract covered the subject of employment in the case fully.
It purports that they did not mean to negotiate about the sub-
ject in any different terms.   A verbal contract covering ex-
actly the same subject dealt with in a written contract entered
into between the same parties at the time the verbal one is
made, can not be established.   Enc. Dig. Va. & W. Va. 646;
*Seitz* v. *Brewers' etc. Machine Co.,* 141 U. S. 510; Wigmore
on Evidence, sec. 2436.

While Ellison may not depend on his alleged verbal con-
tract, he may introduce, as has been done, the written con-
tract which Vance executed to him for the additional fee
about a year after he had originally bound himself to render
the legal services by the Ellison-Avis contract.   But this sub-
sequent contract that Vance shall pay him an additional
thousand dollars for the legal services, rests on no new con-
sideration.   Ellison was already obligated by the former con-
tract to do for five hundred dollars what he agreed to do for
one thousand dollars by this subsequent contract.   Where the
consideration for the payment of this one thousand dollars?

It does not exist. Whether, as Vance claims, the subsequent contract of employment was obtained by extortion and unfairness as between attorney and client, or not so obtained, the contract has no consideration to give it validity. Recently, in *Thomas* v. *Mott*, 74 W. Va. 493, we held that the doing of what one is already bound to do, does not constitute good consideration for a promise. See review of that case in our state law journal, *The Bar*, April 1915, page 41.

Moreover, the contract between attorney and client for the additional fee of one thousand dollars is one which a court of equity will not sanction under the facts and circumstances appearing in this case. Though actual fraud or extortion may not be shown, the contract is presumptively invalid. It was at most a mere gift during the confidential relation, which for reasons of public policy is generally not allowable. Not an extenuating fact appears to take this feature of the case out of the general rule. An attorney does not deal with his client at arm's length. That which an attorney obtains from the client after the relation is established between them and while it exists, will be cautiously guarded. A court of equity will most frequently interfere, at the election of the client, and restore to him fully what has been obtained from him by his attorney beyond the compensation originally fixed. *Keenan* v. *Scott*, 64 W. Va. 137; Week's on Attorneys, secs. 268, 273, 281.

Ellison claims that Vance paid him one-half of the one thousand dollars at the time he paid him the five hundred dollars contracted to be paid in the Ellison-Avis contract. That he paid him a full one thousand dollars and some interest at that time, is fully established. The testimony of Vance, Ellison, and the latter's partner, is conflicting as to what the additional five hundred dollars was a payment on. But full consideration of all the evidence, facts, and circumstances in the case leads us to hold that but two hundred dollars of the payment was meant to go on the additional fee contract. At the time the payment of one thousand dollars and interest was made by Vance to Ellison, five hundred dollars was not owing on the additional contract. The suit had not been decided in any court. As we have indicated, payment under the additional contract was contingent on success in the

Buffalo Coal & Coke Company suit. That success at last came
to Vance in this court, after adverse decision below. But be-
fore the payment of which we are speaking, Ellison by a third
writing with Vance had eliminated the contingent feature as
to a portion of the amount, so that three hundred and thirty-
three and a third dollars was virtually absolute. Vance says
the five hundred dollars which he paid over and above the
amount due under the Ellison-Avis contract, was three hun-
dred dollars due in another case—the Stollings suit—just then
decided, and two hundred dollars which Ellison obtained from
him in some way that he never understood. Controlling facts
and circumstances lead us to find that the payment of this
five hundred dollars was meant to cover the three hundred
dollars in the Stollings case and two hundred dollars on the
additional fee of one thousand dollars. The Stollings case was
just ended. The fee therein, contingent itself on success in
that case which had come, was then due. But the Buffalo Coal
& Coke Company case was not then ended. It was not ended
until months thereafter. Only the five hundred dollars under
the Ellison-Avis contract which was absolute, and the portion
of the additional fee as to which contingency had been re-
moved, could Ellison then demand, or was Vance likely to
pay. These circumstances rather confirm the testimony of
Vance, and negative the testimony of Ellison that the five
hundred dollars was paid him on the additional fee of one
thousand dollars not then due because the litigation on which
it was contingent was not then terminated. But stronger than
all these considerations, plainly fitting and confirming them,
is the language of the deed of trust which Ellison obtained
from Vance as security at a time subsequent to the payment
of the one thousand dollars and interest. The eight hundred
and sixty dollars secured by the deed of trust is recited therein
by the parties to be "for legal services performed, and to be
performed, in the case of the Buffalo Coal & Coke Company
against the said J. M. Vance." This certainly means that the
debt which the deed of trust purports to secure, exists out of
what has not been paid on account of the Buffalo Coal & Coke
Company case. It proves that the five hundred dollars was
applied to the Stollings fee, as Vance says, and to two hun-
dred dollars of the additional fee of one thousand dollars in

the Buffalo Coal & Coke Company case. The two hundred dollars from one thousand dollars accounts for the eight hundred dollars as the amount which figures in the deed of trust, with sixty dollars added to it evidently on the score of interest. Assuredly the deed of trust in describing the debt secured, negatives the claim that five hundred dollars was paid on the additional fee. It confirms the fact that the two hundred dollars over and above the Stollings fee was what Ellison applied on the additional fee at the time of the payment. Ellison's claim that the Stollings fee is covered by the deed of trust is inconsistent with what the deed of trust itself says.

We must take the deed of trust on its face, and hold that the money secured therby is based on the additional contract which we have found invalid for reasons hereinbefore given. That contract is unenforceable. Equity will step in with its injunctive process and halt a sale under the deed of trust for a collection of the amount claimed under the invalid contract.

Vance further claims right to a decree for the two hundred dollars paid on the invalid contract. That we shall not grant him, though ordinarily equity under the circumstances of the case would restore it to him. For, it appears that by the contract in the Stollings case, Ellison was to have two hundred dollars additional to the three hundred dollars which has been paid him thereon, in the event the Buffalo Coal & Coke Company case was decided in Vance's favor. That two hundred dollars by the favorable decision in the last named case is now due to Ellison. The Stollings contract seems free from any invalidity. Equity in its fairness will say that the account between Ellison and Vance is square.

The decree will be reversed. The injunction prayed for, and heretofore preliminarily awarded, will be perpetuated.

*Reversed, and decree rendered for plaintiff.*