WM. P. HUDDLESTON AND DORA E. HUDDLESTON

*v.*

AMERICO MARIOTTI AND SARAH E. MARIOTTI

(No. 10932)

Submitted January 28, 1958. Decided March 25, 1958.

420

*Sanders, Smoot & Sanders, Lilly & Bivens,* for appellants.

*Richardson, Hudgins & Hancock,* for appellees.

GIVEN, JUDGE:

Plaintiffs, Wm. P. Huddleston and Dora E. Huddleston, filed their bill of complaint in the Circuit Court of Mercer County against Americo Mariotti and Sarah E. Mariotti, praying that defendants be enjoined from constructing a motel on certain real estate, and that they be enjoined from engaging, directly or indirectly, in the motel business, in violation of terms of a certain contract. Plaintiffs filed an amended and supplemental bill of complaint wherein relief is prayed against an additional defendant, Christine Barley. The circuit court, on final hearing, entered a decree enjoining the three defendants "* * * from constructing or using upon the parcel of land conveyed to the defendant Christine Barley, by deed dated November 12, 1956, a building designed and capable of being used for a motel in competition with the business of the Bel-Air Motel and, further, that the defendants Americo Mariotti and Sarah E. Mariotti be, and they are hereby perpetually enjoined and inhibited from engaging directly or indirectly in any motel business in competition with

the business of said Bel-Air Motel within a radius of ten miles from said Bel-Air Motel and within the period of ten years from August 1, 1954, except with the written consent of the plaintiffs herein". An appeal from the decree was granted to the defendants Americo Mariotti and Sarah E. Mariotti. Christine Barley did not join in the petition for the appeal.

Americo Mariotti, on July 26, 1954, being then the owner of a tract of land containing approximately ninety acres, entered into a contract whereby he agreed to sell and convey unto Wm. P. Huddleston a parcel of such tract, about two acres, on which he previously had constructed a number of motel units, known as the Bel-Air Motel. He had operated the Bel-Air Motel for approximately nine months. The contract of sale contained this provision: "* * * Seller agrees that he will not engage in Motel business within a radius of 10 miles of the Bel-Air Motel for a period of 10 years from date of this sale without the consent in writing of the Buyers".

The Bel-Air Motel, including the parcel of land on which the several motel units were situated, by deed dated August 2, 1954, executed by Americo Mariotti and his wife, was conveyed to plaintiffs. The deed did not incorporate or mention the provision contained in the contract relating to the agreement of Mariotti not to engage in the motel business.

Subsequently, Americo Mariotti commenced the construction of another motel, consisting of a larger number of units than contained in the Bel-Air Motel, in close proximity to the Bel-Air Motel, on a part of the ninety acre tract of land mentioned above, with the previously expressed intention of selling and conveying the same to Christine Barley. The trial court enjoined the defendants from constructing and from operating the competing motel.

The amended bill alleges, in effect, that a pretended contract was executed by the Mariottis to Christine Barley, whereby the new motel was to be constructed and

operated by the Mariottis and Christine Barley in "pursuance of the plan and design" of defendants to "avoid the obligation and contract", made by the Mariottis and Wm. P. Huddleston, more specifically, the provision thereof relating to the engaging in the motel business by Mariottis; that the construction or operation of the competing motel "will constitute a continuing breach of contract and of duties on part of defendants"; and that, if permitted, the construction and operation of the competing motel will cause plaintiffs irreparable damages.

Appellants contend that the pertinent provision of the contract here involved, quoted above, does not prohibit the construction of the competing motel, nor the sale thereof, and that the evidence adduced does not support any finding to the effect that appellants intend to operate the competing motel, or to "engage in the motel business". They do not contend that they have any right to operate a competing motel within the distance or time limits specified in the contract.

Contracts in restraint of trade, in this State, if not unreasonable or violative of some public policy or positive law, are held valid. "2. Where no public right is affected, a reasonable restriction on trade is not against public policy. A restraint is reasonable which is incidental to the transaction and gives merely a fair protection to the party imposing it." *Barnes* v. *Koontz,* 112 W. Va. 48, 163 S. E. 719. See *Pancake Realty Co.* v. *Harber,* 137 W. Va. 605, 73 S. E. 2d 438; *Axford* v. *Price,* 134 W. Va. 725, 61 S. E. 2d 637; *Boggs* v. *Friend,* 77 W. Va. 531, 87 S. E. 873; *Slaughter* v. *Thacker Coal & Coke Co.,* 55 W. Va. 642, 47 S. E. 247, 104 Am. St. Rep. 1013, 65 L.R.A. 342; *West Virginia Transportation Co.* v. *Ohio River Pipe Line Co.,* 22 W. Va. 600, 46 Am. Rep. 527. Such contracts, however, are to be strictly construed, with a view of avoiding excessive restrictions of trade. *Pancake Realty Co.* v. *Harber, supra; Glantz* v. *Willow Supply Co.,* 139 N. J. Eq. 523, 53A. 2d 346; *Texas Shop Towel* v. *Haire,* 246 S. W. 2d 482; *Kramer* v. *Old,* 119 N. C. 1, 25 S. E. 813, 34 L.R.A. 389; *Simmons* v. *Johnson,* 11 So. 2d 710; *Hubman Supply Co.* v. *Irvin,* 67 Ohio L.A. 119,

119 N. E. 2d 152; *Adams* v. *Adams,* 156 Neb. 778, 58 N. W. 2d 172. In a very recent case we held: "2. When the terms of a valid written contract are clear and unambiguous, full force and effect will be given to the language used by the parties." *Magnus* v. *Halltown Paper Board Company,* 143 W. Va. 122, 100 S. E. 2d 201.

The reading of the testimony discloses that the principal difference existing between the litigants arises from the meanings attributed by them to the language of the pertinent provision of the contract, plaintiffs believing that the language used precludes even the construction of a motel within the limits provided, while defendants contend that they are only precluded from conducting or operating a motel business, and that such a business has no relation to the construction of a motel. In the circumstances, we must look alone to the language of the contract to determine its meaning and effect. Under applicable rules, we are required to look to the whole contract to determine such meaning and effect. In doing so, we find nothing therein which would warrant the giving to the words used in the provision quoted any meaning other than that accorded to them as ordinarily used. That language, to us, can have only the meaning or effect of precluding the Mariottis from engaging in, that is, conducting or operating, directly or indirectly, a motel business. It has no relation to the construction or sale of any competing motel. The restriction, of course, would preclude the Mariottis from such operation as to the motel being constructed or as to any other motel within the limits fixed by the contract. No other meaning can reasonably be attributed to the words used. The words to "engage in motel business" simply can not be broadened to include the construction or sale of a motel property.

Since we hold that the construction or sale of the competing motel by Americo Mariotti is not in violation of the terms of the contract, it necessarily follows that the Mariottis should not be enjoined from the construction thereof. The holding renders it unnecessary to detail or consider the evidence relating to such construction or

to the intention of Mariottis to sell and convey the same, or the evidence relating to the intention or ability of Christine Barley to purchase the motel or to operate a motel business, except insofar as such evidence may relate to the intent or purpose of Americo Mariotti and Sarah E. Mariotti to conduct a motel business, in conjunction with, or in the name of, Christine Barley, "in pursuance of the plan and design" to avoid the obligations of the contract, alleged in the amended and supplemental bill of complaint.

Two witnesses, Wm. P. Huddleston and John T. Watts, Jr., testified at the instance of plaintiffs. Huddleston testified fully as to negotiations leading to the purchase by him of the Bel-Air Motel, to negotiations of Christine Barley in an attempt by her to purchase from him the Bel-Air Motel, and as to conversations had between himself and the defendant Americo Mariotti concerning the construction of the competing motel, before and after the commencement of the construction thereof. In one of such conversations he was told by Mariotti that he was "not going to operate that motel. I'm going to sell it to Miss Christine Barley". The witness further testified that he "thought" Miss Barley was, in the negotiations for the purchase by her of the Bel-Air Motel, working in "connection with Mr. Mariotti". The witness also testified to the effect that Mr. Mariotti, before commencing the construction of the competing motel, requested a release from the agreement "about building a motel". On cross-examination, he was asked the following questions, to which he gave the following answers: "Q. Do you know, of your own knowledge, of anything, any dealings between Mr. Mariotti and Miss Barley here, that would tend to show that she was collaborating with Mr. Mariotti to run this motel for him and act as a front for him? A. Do I know anything? Q. Yes. A. No, sir. All I know is one of the trips I was talking about. Q. Well, now, I just wanted to know if you knew anything as a fact. I believe you say you don't know? A. That's right."

The other witness called on behalf of plaintiffs testi-

fied as to a statement made by defendant, Americo Mariotti, to the effect that he "thought he might put a restaurant in between the two motels". We do not understand that it is contended that Mariotti was precluded by the terms of the contract from constructing, or even operating, a restaurant near the Bel-Air Motel. The witness testified to nothing further which could reasonably be contended to have any probative value as to any issue involved.

Considering the testimony of the two witnesses in the light most favorable to plaintiffs, it does not, we think, constitute a sufficient basis for an inference that Americo Mariotti and Sarah E. Mariotti agreed or had any understanding with Christine Barley to the effect that the motel business was to be operated or conducted jointly by them and Christine Barley, or that they had, or intended to have, any interest in the motel, or in the operation thereof. Certainly, such testimony does not point, directly or definitely, to any such understanding or intention. The testimony is as consistent with the contentions of defendants as with those of plaintiffs. In such circumstances, no inference of the alleged "plan and design" to avoid or circumvent the terms of the contract can arise. The testimony simply constitutes no substantial proof of such a plan or design. The plaintiffs, the persons on whom lies the burden of proof, have failed to make out their case by, at least, a preponderance of the evidence. Speculation or suspicion is not sufficient for that purpose. See *Burk* v. *Huntington Development & Gas Co.*, 133 W. Va. 817, 58 S. E. 2d 574; *Lambert* v. *Metropolitan Life Insurance Co.*, 123 W. Va. 547, 17 S. E. 2d 628; *McGhee* v. *Stevens*, 121 W. Va. 430, 3 S. E. 2d 615; 15 C. J. S., Conspiracy, Section 30; 28 Am. Jur., Injunctions, Section 297.

Though the defendants, Americo Mariotti and Christine Barley, testified positively to the effect that no agreement or understanding existed between them whereby Mariotti was to have any interest in, or in the operation of, the motel, apparently plaintiffs rely, in very large part, on statements and circumstances disclosed by their testimony. For that reason, we have carefully considered

their testimony, along with the other evidence, in an effort to find whether the position of plaintiffs can be prima facie maintained. Much reliance by plaintiffs appears to be placed on the facts that Christine Barley was attempting to acquire ownership of property at a price of $135,000.00, while her net worth was probably not greater than forty or forty five thousand dollars. Such facts, however, can hardly constitute the basis for a suspicion that the defendant, Americo Mariotti, and Christine Barley, intended to jointly operate the motel business, especially in the face of the further facts that the net profits of the motel business would probably be not less than one thousand dollars per month, and that the grantors would have been fully protected by liens against the property to be conveyed. Whether or not, in such circumstances, the contemplated transaction was "good business" in the opinion of the grantors, could have no substantial bearing or effect on the question of whether the motel business was to be operated jointly by Americo Mariotti and Christine Barley.

The terms and conditions of the sale and transfer of the new motel property were apparently orally agreed to between defendant Americo Mariotti and Christine Barley in September, 1956, while the actual conveyance was not made until November 12, 1956. At the time of the conveyance, only one hundred dollars of the agreed purchase price had been paid, though the sum of $12,500.00 was agreed to be paid at time of transfer of title. At most, such facts create only suspicion. They are, we believe, satisfactorily explained. It was understood that the amount of the agreed cash payment was to be obtained by Miss Barley by a sale of, or a loan secured by a lien against, certain properties owned by her, or in which she owned an interest. It was for the best interests of all that the greatest sum possible be obtained by her from such sources, and the delay in the making of the cash payment was merely acquiesced in by Americo Mariotti for such purpose. It is clearly shown that she had attempted to obtain a loan, and also had attempted to make sale of her property, prior to any knowledge

of a threat of the present litigation. Moreover, Mariotti testified that he was not in position, because of another construction contract, to immediately commence construction of the motel.

The defendant Christine Barley was asked and answered the following questions: [Q] "But, if this suit goes against Mr. Mariotti then you don't intend to pay Mr. Mariotti any part of the twelve thousand five hundred dollars, you will not be bound? A. If Mr. Mariotti loses this suit and I can get another contractor, if the Court will let me, I will go ahead and build that motel. [Q] You won't be bound to pay Mr. Mariotti any part of the twelve thousand five hundred dollars? A. Yes. I will be bound to pay Mr. Mariotti the price of his lot and up until what he has done now, I imagine." It is contended that the position taken by Christine Barley as to her ultimate liability indicates an understanding between her and the defendant Americo Mariotti as to the operation of the motel. We fail to see, however, how her view as to what her liability under the contract would be, in the event performance thereof by Mariotti became impossible because of the result of the litigation, would possibly form any basis for an inference as to the existence of the alleged "plan and design" to avoid the terms of the contract.

What has been stated, we believe, sufficiently discloses the nature and lack of probative force of the evidence relied on by plaintiffs to warrant the issuance of the injunction against Americo Mariotti and Sarah E. Mariotti as to the operation of the motel in question. At most, a mere suspicion may exist to the effect that defendants entered into an agreement, in the nature of a conspiracy, to avoid the terms of the contract. Such suspicion, though it be considered strong, is not sufficient to create a clear inference of the facts alleged. See 43 C. J. S. Injunctions, Sections 15, 19 and 21. It would seem clear, therefore, that no basis exists warranting the issuance of the injunction prohibiting Americo Mariotti and Sarah E. Mariotti from operating or conducting the motel busi-

ness. This conclusion, of course, does not mean that the defendants may engage in or operate such a business in violation of the contract. Should they later attempt to do so, the courts will be open for proper relief to those entitled thereto.

Subsequent to the entry of the final decree complained of, certain affidavits were made and depositions taken and attempted to be filed as part of the record of this appeal. Of course, "Whenever it appears from the record, or is shown by extrinsic evidence, that there is no controversy existing between the litigants, or, if it once existed, it has been settled or has ceased to exist, the writ of error or appeal will be dismissed. Courts do not sit to determine moot questions * * *". 1 M. J., Appeal and Error, Section 220. But the supposed additional new facts do not lend themselves to a determination of whether the matters being litigated are moot. They attempt to influence matters to be decided on the appeal. They can not be made a part of the record of this appeal for that purpose and were not entitled to be filed. On matters of appeal or writs of error, this Court considers only matters, other than jurisdictional matters, determined by the trial court, and only on records made in the trial court. See 1 M. J., Appeal and Error, Sections 199 and 242.

The decree complained of, insofar only as it affects the defendants Americo Mariotti and Sarah E. Mariotti, is reversed and, as to such defendants, the injunction awarded by the Circuit Court of Mercer County is dissolved and the proceeding is remanded to that court.

*Reversed; injunction dissolved; remanded.*