DAVE L. WYCKOFF *et al., etc.*

*v.*

WALTER L. PAINTER

(No. 11097)

Submitted April 20, 1960.    Decided June 14, 1960.

*Jackson, Kelly, Holt & O'Farrell, F. Paul Chambers, John L. McClaugherty, Campbell, McNeer, Woods & Bagley, S. S. McNeer,* for appellants.

*William H. Hazlett, Langdon C. Morris,* for appellee.

CALHOUN, JUDGE:

In this suit in equity instituted in the Circuit Court of Kanawha County, the plaintiffs seek by injunction to enforce against the defendant a restrictive covenant contained in a contract of employment. The lower court granted a temporary injunction, but, after the taking of testimony, dissolved the temporary injunction and dismissed the plaintiffs' second amended bill of complaint. From such final decree the plaintiffs have appealed to this Court.

The defendant has moved the Court to dismiss the appeal granted herein to the plaintiffs on November 23, 1959, and plaintiffs' motion to reverse, which motion to reverse was made pursuant to leave granted on January 18, 1960. The grounds assigned for defendant's motion are: (1) That plaintiffs failed to comply with Rule IV, Section 3, of the Rules of Practice of this Court in not designating, within twenty-one days after due notice of the granting of the appeal, the part or parts of the record which they desired to have printed; and (2) that no notice was served on the defendant or his counsel that the plaintiffs were applying to this Court for leave to file their motion to reverse in accordance with Rule IX, Section 1, of this Court and Code, 58-5-25.

After permission was granted to the plaintiffs on January 18, 1960, to move to reverse, which required the case to be heard and considered on the whole original record filed with the Court, the requirement for designating the part or parts of the record to be printed under Rule IV, Section 3, became inapplicable.

If the Court had refused to grant the permission to move to reverse, plaintiffs would still have had an

opportunity under Rule IV, Section 11, to move for an enlargement of the time to specify the record to be printed by showing good cause for failure to act within the twenty-one-day period. Plaintiffs have alleged in their petition for leave to file a motion to reverse and in their briefs certain matters, extraneous to the record, not denied by defendant, which might be deemed to account for their failure to act within the twenty-one-day time limit, but since the question of showing good cause for extending the time limit is not now before us, we do not pass upon the sufficiency of such allegations. No delay in the prosecution of the case has been occasioned by the procedure followed and the defendant does not allege any prejudice by reason thereof.

The plaintiffs did not give to the defendant any prior notice of the filing on January 13, 1960, of their motion for leave to file a motion to reverse, but after the leave was granted on January 18, 1960, to file the motion to reverse, the plaintiffs did give defendant the thirty-day notice, as required by Rule IX, Section 1, and Code, 58-5-25, before making the motion to reverse, thus complying with the rule and the statute. Under all the circumstances the defendant's motion to dismiss the appeal and to dismiss plaintiffs' motion to reverse should be and is overruled.

Plaintiffs, Dave L. Wyckoff, Burton Borman, Jack Borman, Roy Markus and Eva Markus, are partners doing business at Charleston as United Associates of West Virginia and, during all times material herein, have been general agents in West Virginia for United Insurance Company of America, a corporation, plaintiff.

The defendant, Walter L. Painter, during the years 1956 and 1957 was employed by United Associates of West Virginia (sometimes referred to herein as the "partners" or the "partnership"), as an agent to sell insurance. In 1957 the defendant went to Ohio where he became associated with another insurance company.

After some preliminary negotiations the defendant called Dave L. Wyckoff by telephone and, as a consequence of the telephone conversation, the defendant came from Ohio and met Wyckoff at the latter's office in Charleston on February 21, 1958. It was then verbally agreed by them that the defendant would accept re-employment with the partnership as agency director, on a salary basis of $1,000 a month plus expenses, in lieu of commissions on insurance sold thereafter by the defendant, except that it was agreed that the defendant would receive commissions on premiums for renewals of policies sold by him while previously employed by the partnership during the years 1956 and 1957. As a part of the contract of employment, it was further agreed that the defendant would recruit new men as agents and train them as such by demonstrating sales methods by example in the field.

At the meeting held at Wyckoff's office on February 21, 1958, the defendant signed as "AGENT" a lengthy agreement containing twenty-six numbered paragraphs, including Paragraph (24) which contains the restrictive covenant in controversy herein. Wyckoff signed the contract as "STATE MANAGER". The first paragraph and the final paragraph of the form agreement were left blank as follows:

> "THIS AGREEMENT made this _____ day of _____, 19____, effective as of the _____ day of _____, 19____, by and between _____ General Agent, and designated State Manager for United Insurance Company of America within the state of _____ _____, hereinafter referred to as the 'STATE MANAGER' and _____ hereinafter referred to as 'AGENT', said United Insurance Company of America being referred to as 'COMPANY'."

> "IN WITNESS WHEREOF, the parties hereto have set their hands this _____ day of _____, 19_____."

On June 13, 1958, the defendant signed in triplicate a writing identical with the one previously signed,

except that all blanks were properly filled, including a blank in Paragraph (24) which made the restrictive covenant operative throughout West Virginia, and also including a blank in the initial paragraph which made the agreement effective as of April 7, 1958, the date on which the defendant obtained his West Virginia license to sell insurance.

Paragraph (24) of the written agreement is as follows:

"While the Agent is soliciting applications for policies of insurance issued by the Company under the supervision of the State Manager and for a period of one year thereafter, Agent agrees that he will not directly or indirectly be connected with any other health and accident or life insurance company engaged in similar business to the business conducted by the State Manager in any territory within the State of West Virginia. Agent further agrees that in the event of the termination of his association with the Company and the State Manager that he will not directly or indirectly induce or attempt to induce any Agents, Unit Managers, Collectors or employees of the State Manager to terminate their association with the State Manager of the Company; nor will the Agent induce or attempt to induce any policyholder of the Company to terminate his or her insurance with the Company. It is agreed by and between the State Manager, Company and the Agent that there is no adequate remedy at law in the event the Agent violates any of the aforesaid covenants and, therefore, it is agreed that injunction proceedings may be brought against the Agent in the event of any such violations; and it is further agreed that in the event Agent violates any of the aforesaid covenants contained in this Paragraph his rights to Service Fees on renewal premiums, if any, shall immediately cease and terminate."

On October 15, 1958, the defendant terminated his employment with the partnership and began the organization of an agency to sell life, health, accident and hospital insurance in West Virginia for the World Insurance Company. At the time of the taking of testimony at the bar of the court on January 22, 1959, five agents previously employed by the partnership were

employed by the defendant. In brief, it appears from the testimnoy that if the restrictive covenant contained in Paragraph (24) was binding upon the defendant, he had breached the provisions thereof prior to the date indicated immediately above.

The United Insurance Company of America (sometimes referred to herein as "the insurance company") was first made a party plaintiff, in addition to the partnership, in the second amended bill of complaint. The plaintiffs therein alleged that when the defendant terminated his employment on October 15, 1958, he was bound by the terms of the written agreement executed in triplicate on June 13, 1958, except to the extent that such written agreement was modified by parol and by the conduct of the parties in three particulars as follows: (1) In addition to soliciting applications for health and accident insurance, it was a part of defendant's duty to recruit and train new agents and to assist Wyckoff in the development of the agency; (2) in lieu of being compensated by commissions, the defendant was to receive a salary of $1,000 a month and expenses; and (3) in lieu of being an agent of the plaintiff partnership and plaintiff company, the defendant was to be an employee of the partnership and an agent of the company.

It is true, as plaintiffs contend, that a written contract in some situations may be modified by the conduct of the parties or by a subsequent parol contract. *Myers v. Carnahan,* 61 W. Va. 414, 57 S. E. 134; *Simpson v. Mann,* 71 W. Va. 516, 76 S. E. 895; *United Fuel Gas Co. v. Ledsome,* 109 W. Va. 14, 153 S. E. 303; *Wheeling v. Water Co.,* 115 W. Va. 353, 176 S. E. 234; *Sanford v. First City Co.,* 118 W. Va. 713, 192 S. E. 337. But the provisions which are alleged to have been added by parol or by conduct of the parties are not directly in issue herein. We are not called upon to decide whether or not the written contract was modified in the particulars alleged, nor whether or not such alleged modifications are binding upon the parties. We are directly concerned only with the pro-

visions of the written contract, and particularly with Paragraph (24) thereof. If there was a binding written contract, and if it was subsequently modified as alleged, such modification did not relate to Paragraph (24). In a case of such modification of a prior written contract, "the new contract will be held to depart from the first to the extent only that its terms are inconsistent therewith." *Sanford v. First City Co.,* 118 W. Va. 713, 721, 192 S. E. 337, 341. The alleged modifications were wholly unrelated to Paragraph (24).

While more than one year has elapsed since the date of the termination of the defendant's employment by the partnership, the case has not for that reason become moot. By a decree entered December 23, 1958, the court granted to the plaintiff partnership a temporary injunction "enjoining and restraining the defendant, Walter L. Painter, until further order of the court, from directly or indirectly being connected in West Virginia with any other health and accident or life insurance company engaged in a similar business in West Virginia to the business conducted by the plaintiffs within the State of West Virginia, and from directly or indirectly inducing or attempting to induce any agents, unit managers, collectors or employees of the plaintiff partners within the State of West Virginia to terminate their association with plaintiff partners." No relief, temporary or otherwise, was granted to the plaintiff insurance company. The decree provided for an injunction bond in the penalty of $7,500 to be given by or in behalf of the partnership. Potentially, therefore, the defendant may have a cause of action against the plaintiff partnership on the injunction bond. Under such circumstances this Court will not treat the case as moot and will not for that reason dismiss the appeal. *Kaufman v. Mastin,* 66 W. Va. 99, 66 S. E. 92; *Barbee v. Howard,* 66 W. Va. 631, 66 S. E. 1002; *Postal Telegraph-Cable Co. v. Montgomery,* 193 Ala. 234, 69 So. 428, Ann. Cas. 1918B 554; 4 C.J.S., Appeal & Error, Section 40(5), page 157.

Dave L. Wyckoff testified that the written contract was not completed in triplicate in the usual manner on Februay 21, 1958, because it was the practice not to do so until the agent obtained his license; and for the additional reason that "we had also run out of contract forms." Helen Matthews, office manager for the partnership, corroborated Wyckoff concerning the short supply of contract forms. She testified further that an adequate supply of such forms was received subsequently, and in June written contracts were completed in triplicate and signed by the defendant and by various other agents for the partnership.

Wyckoff testifed that the defendant had terminated his employment with the partnership twice previously and that the partners wanted the defendant to sign the written contract "because of the two prior experiences we had had of his leaving"; that the partnership advanced to the defendant the sum of $1,525, as a loan at the time he started to work in 1958; that Jack Borman, one of the partners, insisted that Wyckoff require that the defendant sign the form contract before a check was made to him for such loan of $1,525; that the defendant took several men from the partnership when he left in May, 1957; that after the defendant signed the agreement in triplicate, the three copies were sent to the home office at Chicago and approved by the insurance company; that the defendant was subsequently given one of the copies which he had in his possession from July, 1958, until he terminated his employment on October 15 of that year; and that "I wanted the contract signed so that if there was a recurrence of his leaving, we would be able to stop him from competing with us". Wyckoff testified that his reason for wanting the defendant to sign the contract was "because of the prohibition" in it "in view of our previous experience" with him. He testified further that when, on October 15, 1958, the defendant announced his intention to terminate his employment that day, "I reminded him of his agreement not to go to work with a competitive company, and I reminded

him of the restrictive covenant, and his answer to me was that he had taken it to two or three attorneys who said it was not worth the paper it was written on.''

The defendant, Walter L. Painter, on the other hand, testified that Wyckoff asked him to sign the contract initally ''because he had some older men there at that time that he had moved me in on top of and they might feel like they should have my job, or resent *me* being there''; and that on the occasion when the contract was signed by him in triplicate, Mary Knapp, an office employee, brought three copies of the contract to him for his signature. His testimony continues as follows: ''She said that Wyckoff said to sign these, that they needed some extra copies. I said, 'I have already signed one.' She said, 'We still need extra copies', so I signed it and handed it to her.'' He testified further that he talked with an attorney at St. Albans, and asked the attorney ''even if my contract did have that covenant in it, could they do anything about it, * * * and he just told me over the telephone they could not do anything''; and thereafter ''I told Wyckoff I would just have to take my chance'' in relation to the provisions of the written contract.

The defendant apparently does not contend that the contract is invalid because the provisions of Paragraph (24) are against public policy. While admitting that he executed the contract in triplicate, as alleged by the plaintiffs, his position is that it was never intended that such contract would have any operative or binding effect. He does not contend that he had any conversation or verbal understanding with Wyckoff or any of the other partners at or about the time he executed the written contract on June 13, 1958. While he had a copy of the written contract in his possession for months prior to October 15, 1958, there is nothing in the testimony to indicate that at any time from June 13 to October 15 the defendant said or did anything to suggest to the partners or any of them that he did not consider the written contract to

be operative and valid. It is significant in this connection that the defendant consulted one or more attorneys to determine whether or not the restrictive covenant contained in Paragraph (24) was legally binding and enforceable. When the defendant on October 15, 1958, apprised Wyckoff of his intention to terminate his employment on that date, and when Wyckoff thereupon reminded the defendant of the restrictive covenant, he did not assert or contend that the contract was not in operation and effect. Rather his position was that, after having consulted an attorney, ''I told Wyckoff I would just have to take my chance.''

It appears from the testimony that the defendant is experienced in business matters, particularly business matters relating to insurance. It appears also from the testimony that the defendant was familiar with the contract, even if not with the minute details thereof, because like contracts were executed by agents working under his direction for the partnership. He must have recognized that there was perhaps an even greater need for the restrictive covenant as it related to him than as to the agents working under his direction. In brief, the defendant's testimony in this connection is not sufficient to override the testimony, facts and circumstances tending to establish the operative and binding effect of the written contract which he consciously signed in triplicate in relation to a matter of rather grave significance to the partnership.

The evidence fails utterly to disclose that the written contract in question was entered into by the defendant as a result of fraud or mistake. He admits that he freely signed it, knowing at the time that he was doing so. The defendant merely asserts that there was a prior or contemporaneous verbal understanding that the contract was not to be operative or binding. ''Parol evidence can not be admitted (unless in case of fraud or mistake) to vary, contradict, add to, or explain the terms of a written agreement by proving that the agreement of the parties was different from

what it appears by the writing to have been." *Howell v. Behler,* 41 W. Va. 610, syl. 3, 24 S. E. 646. "An unambiguous written agreement entered into as the result of verbal or written negotiations will, in the absence of a showing of fraud or mistake, be conclusively presumed to represent the final agreement of the parties thereto, and may not be varied or contradicted by evidence of conversations or statements had or made at the time of or prior to its execution." *Central Trust Co. v. Virginia Trust Co.,* 120 W. Va. 23, syl. 2, 197 S. E. 12. "The express terms of a deed of trust cannot be contradicted by parol evidence of a promise by the beneficiary, at the time of its execution, that he would not enforce it." *Bradshaw v. Farnsworth,* 65 W. Va. 28, syl. 1, 63 S. E. 755. "When the time of payment is stated in an unambiguous promissory note a contemporaneous oral agreement which fixes a different time or extends the time or imposes any other condition inconsistent with the terms of the note is inadmissible." *West Virginia Mack Sales Co. v. Brown,* 139 W. Va. 667, syl. 1, 81 S. E. 2d 103. *"A contemporaneous oral agreement,* which contradicts, adds to, alters, enlarges or explains a complete written agreement between the same parties, *or varies its legal effect,* when such written agreement is clear and unambiguous, *is void and of no binding force and effect."* (Emphasis supplied.) *Shaffer v. Calvert Fire Insurance Co.,* 135 W. Va. 153, syl. 2, 62 S. E. 2d 699. See also *Hartman v. The Windsor Hotel Co.,* 136 W. Va. 681, 68 S. E. 2d 34; *McKinney v. Providence Washington Insurance Co.,* 144 W. Va. 559, 109 S. E. 2d 480.

The second point of the syllabus of the case of *Tabler v. Hoult,* 110 W. Va., 542, 158 S. E. 782, is as follows: "Parol evidence to prove an agreement between the maker and the payee of a note that the former should not be required to pay it is inadmissible under the rule inhibiting the introduction of parol evidence to contradict, vary, add to or detract from the terms of a written instrument." See also *Cole v. George,* 86 W. Va. 346, syl. 4, 103 S. E. 201; *Duty v. Sprinkle,* 64

W. Va. 39, syl. 5, 60 S. E. 882. An oral agreement by one to whom a release is given that such release will be ignored or disregarded can not be introduced to contradict the plain provisions of the release. *Jackson v. Jackson,* 84 W. Va. 100, 99 S. E. 259. "A written contract cannot be added to or contradicted by oral evidence of different stipulation." *Austin Manufacturing Co. v. Coffman,* 69 W. Va. 376, syl., 71 S. E. 383. "A verbal contract covering the subject dealt with in a written contract entered into between the same parties at the time the verbal one is made, can not be established." *Vance v. Ellison,* 76 W. Va. 592, syl. 1, 85 S. E. 776. See also *Leckie v. Bray,* 91 W. Va. 456, 113 S. E. 746.

Contracts in restraint of trade, if not unreasonable or violative of some public policy or positive law, are valid. *Huddleston v. Mariotti,* 143 W. Va. 419, 102 S. E. 2d 527. The basic test on the question of the validity and enforceability of contracts of this nature is the reasonableness thereof, bearing in mind the rights of the parties and of the public. *Pancake Realty Co. v. Harber,* 137 W. Va. 605, 73 S. E. 2d 438. Covenants such as that contained in Paragraph (24), if reasonable as to time and area, are valid and enforceable. *Household Finance Corporation v. Sutton,* 130 W. Va. 277, 43 S. E. 2d 144; *The O. Hommel Co. v. Fink,* 115 W. Va. 686, 177 S. E. 619; 17 C.J.S., Contracts, Section 254. Paragraph (24) restrained the defendant from the competitive activities therein defined within the State of West Virginia for a period of one year from the date of the termination of his employment. In the circumstances of this case, the Court holds that the covenant was reasonable and therefore valid and enforceable, whether the defendant be regarded as an employee or an agent. *United States v. Addyston Pipe & Steel Co.,* 85 F. 271; 1 Mechem, Agency (2d Ed.), Section 113, page 76; *Sanitary Appliance Co. v. French* (Tex.), 58 S. W. 2d 159.

The defendant urges that the plaintiff insurance company is not a party to the contract and, therefore,

not a proper party plaintiff in this proceeding. We deem it unncessary to decide that question in the light of the Court's holding on the primary issues, and particularly since no relief was granted to the plaintiff insurance company in the lower court.

For the reasons stated herein, the motion to reverse is sustained and the judgment of the Circuit Court of Kanawha County is reversed.

*Reversed.*