CORRECT PIPING CO., Inc., an Indiana corporation, Plaintiff,

v.

CITY OF ELKINS, WEST VIRGINIA, a Municipal Corporation, Defendant.

Civ. A. No. 730-E.

United States District Court
N. D. West Virginia.

Jan. 27, 1970.

Philip J. Graziani, Charleston, W. Va., for plaintiff.

John E. Busch, Elkins, W. Va., for defendant.

## MEMORANDUM OPINION

MAXWELL, Chief Judge.

Plaintiff, an Indiana corporation, in association with William G. Hartman

and Harold R. Elbon, partners, trading and doing business as Building Associates, as contractor, entered into a written contract with the defendant, City of Elkins, a West Virginia municipal corporation, to furnish labor, materials and other services for construction of extensions to the defendant city's water system. The specifications and contract documents are embodied in an instrument entitled "Extensions to Water System Water Line to Reidboard Plant Elkins, West Virginia 1962 AR–W.Va.–55.-042.2." The contract is shown to have been executed by all parties on February 22, 1963.

The complaint recites that, by agreement dated March 24, 1964, recorded in the office of the Clerk of the County Court of Randolph County, West Virginia, Messrs. Hartman and Elbon assigned all their rights and interests in the contract to plaintiff who agreed to complete the contract obligations, including "change orders." Paragraph 10 of the complaint asserts that plaintiff completed construction of the project and that defendant city placed the water line in operation on or about October 27, 1963.

Defendant caused to be prepared a final estimate for the project, dated November 14, 1963, indicating completion of the project and that the sum of $12,-004.52 was yet due to plaintiff-contractor thereon. Negotiations failed to produce a settlement between the parties and this action was instituted December 1, 1966, for plaintiff's recovery of the total sum of $39,526.20 from defendant for balance due on the contract, extra work and materials, interest and other sums itemized.

Defendant city, denying many allegations of the complaint, admits in paragraph 11 of its answer that it owes plaintiff the sum of $12,004.52. Defendant denies interest items claimed by plaintiff, asserting that the project funds had to be requisitioned from the Federal Government and that a Federal Government audit had to be completed before payment could be made to plaintiff, all of which circumstances were known to plaintiff prior to execution of the contract.

A "Joint Motion by Plaintiff and Defendant for Judgment on the Pleadings" was filed on October 12, 1967, and on that date the Court entered judgment for plaintiff and against defendant for the sums of $280.41 for materials sold by plaintiff to defendant and $12,004.-52, the amount recognized by the final estimate to be due plaintiff on the contract. All other items claimed by plaintiff were denied in the Court's judgment order, except the item of interest was left open for adjudication after the parties had submitted briefs and had an opportunity to present evidence thereon. Consequently, the only issue before the Court at this time is whether any interest is owing by defendant to plaintiff on the sum of $12,004.52 and, if so owing, for what period of time.

Jurisdiction of this action is based on diversity of citizenship and amount in controversy. 28 U.S.C.A. § 1332. No question appears as to jurisdiction.

The complaint recites that the contract here involved was dated December 19, 1962, and is incorporated in the complaint by reference. Defendant's answer admits the correctness of these recitals. The contract document discloses the contract was executed on February 22, 1963.

The complaint, paragraph 3, recites that Final Estimate No. 5, dated November 14, 1963, is incorporated by reference. Defendant's answer does not deny this incorporation and defendant's brief, page 1, recognizes the preparation and execution of the final estimate and that a copy thereof has been submitted to the Court.

The contract documents, Special Conditions, page 33, item 8, read:

"Before the work is accepted and final payment made therefor, Contractor will execute a maintenance bond in form and with corporate surety approved by Owner in an amount equal to twenty (20) percent of the contract price * * *."

Paragraph 3 of the complaint refers to the maintenance bond. Defendant's brief, page 4, refers to the executed maintenance bond, dated June 12, 1964, a copy of which is attached to and made a part of the brief.

The three instruments, the contract, the final estimate and the maintenance bond, are thus identified and recognized by the parties and are considered parts of the record in this action. Defendant's answer, paragraph 10, and its brief refer to the Federal Government audit of the project, but the audit itself is not found in the record. The General Conditions of the contract documents, item 14, page 7, relates to inspections by representatives and agents of the Housing and Home Finance Administrator but does not mention a Federal Government audit.

The substantive law of West Virginia, relating to contracts and interest, will apply in this action. 28 U.S.C.A. § 1652; Erie R. Co. v. Tompkins, 304 U.S. 64, 54 S.Ct. 817, 82 L.Ed. 1188 (1938); Tow v. Miners Memorial Hospital Association, 305 F.2d 73 (Cir. 4th 1962); Culbertson v. Jno. McCall Coal Co., 275 F.Supp. 662 (S.D.W.Va.1967); 20 Am. Jur.2d, Courts, §§ 207–209 (1965); Annot., 21 A.L.R.2d 247 (1952).

▆▆▆ "The principles of law governing the construction of contracts generally are applicable to building and construction contracts." 13 Am.Jur.2d, Building and Construction Contracts, § 8 (1964). "A contract must be considered as a whole, effect being given, if possible, to all parts of the instrument." Wood Coal Co. v. Little Beaver Mining Co., 145 W.Va. 653, 116 S.E.2d 394 (1960). The intention of the parties to the contract shall be controlling and the courts may not rewrite the contract for them. Eastern Gas and Fuel Associates v. Midwest-Raleigh, Inc., 374 F.2d 451 (Cir. 4th 1967); 4 Williston on Contracts, § 610A (3d Ed.Jaeger 1961). "Uncertainties in an intricate and involved contract should be resolved against the party who prepared it." Charlton v. Chevrolet Motor Co., 115 W.

Va. 25, 174 S.E. 570 (1934); Lewis v. Barnes Construction Co., 179 F.Supp. 673 (N.D.W.Va.1959); Castner, Curran & Bullitt, Inc. v. Sudduth Coal Co., 282 F. 602 (Cir. 4th 1922); 4 Williston on Contracts, § 621 (3d Ed. Jaeger 1961). The parol evidence rule "requires, in the absence of fraud, duress, mutual mistake, or something of the kind, the exclusion of extrinsic evidence, oral or written, where the parties have reduced their agreement to an integrated writing." 4 Williston on Contracts, § 631 (3d Ed. Jaeger 1961); Hartmann v. Windsor Hotel Co., 136 W.Va. 681, 68 S.E.2d 34 (1951); Wyckoff v. Painter, 145 W.Va. 310, 115 S.E.2d 80 (1960). Another general principle of contract law is stated in the following language from 17 Am.Jur.2d, Contracts, § 288 (1964):

In the case of a contract with a state or other government, the language of the contract, as in other cases, is to be given its usual and ordinary meaning, if that is possible. However, where the words employed are fairly susceptible of more than one interpretation, agreements affecting the public and agreements with a governmental body on behalf of the public are construed in favor of the public. In other words, contracts with the government affording a basis for construction by the court are to receive a liberal construction in favor of the government. Thus, the rule in construing contracts in which the government is a party is to resolve all ambiguities, presumptions, and implications in its favor.

See also 4 Williston on Contracts, § 626 (3d Ed. Jaeger 1961).

In the light of these basic principles and rules of contract law, the total contractual relationship between plaintiff and defendant in this action will warrant careful examination and consideration.

Settle Engineers, Inc., consulting engineers, of Charleston, West Virginia, was the engineering firm "employed and designated to act in a professional capacity for the planning and execution

of the project." Contract Documents, Special Conditions, item 4, Definitions, pages 31–32. The authority and responsibility of the engineers are referenced numerous times in the contract papers, particularly in General Conditions, item 35, pages 16–17. The contract documents were on file in the office of the consulting engineers for examination by bidders on the project. Final Estimate No. 5, dated November 14, 1963, was prepared by Settle Engineers, Inc., identified as estimate of completed work, amount due contractor, $12,004.52, approved for payment. Defendant's brief states the final estimate was not jointly approved by the contractor and engineer until September 28, 1964, although the final estimate instrument itself does not show date of joint approval. These and other provisions relating to and steps in execution of the project disclose that the consulting engineers, employed by defendant, were primarily responsible for preparation of the contract documents. It may be reasoned, then, that two principles of contract law oppose each other * * * that defendant prepared the contract and the contract, where construction may be required, is to be construed against the defendant, the party preparing the contract, but that the defendant city is a governmental body which, under another principle, is entitled to a liberal construction of the contract in its favor.

Special conditions of the contract documents, item 8, page 33, required the contractor to execute a maintenance bond before the work was accepted and final payment made. This instrument was executed on June 12, 1964. Defendant's brief states that defendant city adopted a resolution requesting a federal audit of the project, on March 4, 1965. at a time when work on a change order on the project was yet in progress. The brief also states that the federal audit was completed December 6, 1966, and the defendant city was advised thereon shortly thereafter. In the meantime, on December 1, 1966, this action had been instituted. The joint motion by plaintiff and defendant for judgment on the pleadings, filed on October 12, 1967, recites that, on October 3, 1967, defendant paid and plaintiff accepted the sum of $12,004.52, the final estimate amount, leaving the interest thereon, if any, to be determined by the Court. On the motion for judgment the primary issue is whether this record gives bases for defendant's payment of interest to plaintiff on the $12,004.52 and, if so, for what period of time.

In their briefs plaintiff and defendant agree that the contract makes no provision for payment of interest. In early recorded history the taking or exaction of interest was looked upon with disfavor. Allowance of interest in England was approved by statute enacted in 1545. America recognized and accepted allowance of interest payments. 47 C.J.S. Interest § 2 (1946); 45 Am.Jur. 2d, Interest and Usury, § 3 (1969). "A past due debt, certain in amount, bears interest from the due date until paid." Morton v. Godfrey L. Cabot, Inc., 134 W.Va. 55, 63 S.E.2d 861 (1949). "Unless otherwise expressly provided by the terms of an enforceable contract, interest does not begin to run until an indebtedness becomes due and payable." Jones v. Shipley, 122 W.Va. 65, 7 S.E.2d 346 (1940); 45 Am.Jur.2d, Interest and Usury, § 87 (1969).

Plaintiff and defendant, in their briefs, cite Bischoff v. Francesa, 133 W.Va. 474, 56 S.E.2d 865 (1949), a case having factual background somewhat comparable to the action now before the Court. The following language from the opinion of the West Virginia Supreme Court of Appeals, pages 493–494, 56 S.E.2d pages 875–876 will be, for present purposes, a sufficient statement of the facts and opinion:

And finally we are of opinion that the trial court erred in holding that interest should be allowed on plaintiffs' judgment from the time of the commissioner's report, June 16, 1948, and not from March 15, 1944, the date that defendants attempted to make fi-

nal settlement with the plaintiffs, that being the date of their final estimate. Where a claim is liquidated or can be ascertained by computation, interest should be allowed from the date when payment should be made; and the fact that there was a dispute between the parties as to the amounts due, plaintiffs' claim, nevertheless, was capable of computation in the event they were entitled to prevail in the dispute entailed in this record. Here the unit prices under the original contract, as well as any modification due to the change order, were clearly specified. Defendants' compensation was to be ten per cent; plaintiffs' compensation was to be the bid price less ten per cent. So plaintiffs' claim from the time defendants submitted their final estimate, showing the amount and quantity of the work done, was capable of computation, and plaintiffs, as the moneys were received from the housing authority, then and there were entitled to payment. In Bennett v. Federal Coal & Coke Co., 70 W.Va. 456, pt. 1 syl., 74 S.E. 418, 40 L.R.A.,N.S., 588, this Court said: "As a general rule, where plaintiff's demand is liquidated, or if unliquidated, can be readily ascertained by computation, interest thereon should be allowed, if the demand be for work done or material furnished, from the date the labor is done or material furnished, or from the date when by the terms of the contract payment should have been made." On page 459, of 70 W.Va., 74 S.E. page 419 of the opinion the Court, citing Chapman's Adm'rs v. Shepherd's Adm'r., 24 Grat. 377; Roberts' Adm'r v. Cocke, 28 Grat. 207, and other Virginia cases, said: " * * * when there is no express contract to pay interest, there is an implied contract to do so." This rule was followed by this Court in the recent case of Lockard v. City of Salem, 130 W.Va. 287, 43 S.E.2d 239. We therefore hold that plaintiffs are entitled to interest from March 15, 1944, the date of final computation.

Defendant's brief, page 5, concedes the propriety of interest payment, but reasons that "interest was not due until payment was made to the City of Elkins by the federal government and until the same was available for the use of the Plaintiff." The brief also states that the city council adopted a resolution on March 4, 1965, requesting a federal audit of the project; that the federal audit was completed on December 6, 1966; and that payment by the federal government to the city was received by check on May 5, 1967. Defendant's brief states payment was made to plaintiff on October 9, 1967, pursuant to "the order of this Court." Plaintiff's brief implies payment was made to plaintiff on October 3, 1967, the date the parties intended to file the joint motion for judgment. The record shows the motion was actually filed on October 12, 1967, and the Court's order, obviously the one to which defendant's brief refers, was entered on October 12, 1967.

By the law of West Virginia and by concession in defendant's brief lawful interest is payable to plaintiff on the $12,004.52. The date of payment by defendant to the plaintiff is not clear, but, for present purposes, the date of payment of the sum of $12,004.52 by defendant to plaintiff, October 3, 1967, as stated in the motion for judgment, may be accepted. This will be the interest termination date.

Plaintiff contends that interest should begin to run on the sum paid from November 14, 1963, the date of Final Estimate No. 5 showing the $12,004.52 due contractor-plaintiff. But the contract provides that the contractor must execute a maintenance bond before final payment is made. This maintenance bond was executed June 12, 1964. Defendant's brief states that, although the project as originally contemplated was earlier completed, "work on a change order was still in progress" as late as March 4, 1965. The federal audit was requested March 4, 1965, but not completed until December 6, 1966. Defendant city received the government's check

on May 5, 1967, but did not pay plaintiff until on or about October 3, 1967. The record does not explain or justify the delays. The contract documents, apparently prepared by the city's consulting engineers, do not make the federal government audit a condition precedent to payment.

The opinion of the West Virginia Supreme Court of Appeals, in Bischoff v. Francesa, above quoted, accepts the final estimate date as the settlement date on which interest begins to run, even though a dispute continued between the parties as to the amount due. Moreover, the West Virginia Court, having determined the date on which interest begins to accrue, holds that "plaintiffs, as the moneys were received from the housing authority, then and there were entitled to payment." The final estimate date, the settlement date or the date of the account stated, is recognized by the West Virginia Court as the date on which interest begins to run, although payments from the federal housing authority were yet to be received for discharge of the primary money due obligation in controversy.

Attention is directed to an annotation in 24 A.L.R.2d 928–999 (1952), and supplemental cases, reviewing the law in the several jurisdictions on "Recovery of interest on claim against a governmental unit in absence of provision in contract or express statutory provision." The annotation refers specifically to the liability of municipal corporations for interest and recognizes a division in opinions of the courts in the several jurisdictions. However, a majority of the jurisdictions, including Ohio, Pennsylvania, Virginia and West Virginia, allows recovery of interest from municipal corporations. As above indicated the West Virginia substantive law applies to the action now before the Court and the decision here must be in accordance therewith.

The Court finds and concludes that interest on the sum of $12,004.52, paid by defendant to plaintiff, as recognized and adjudged in the order of October 12, 1967, is lawfully payable and is due and owing by defendant to plaintiff from June 12, 1964, the date of the execution of the maintenance bond, by the contract terms made a condition precedent to final payment, to October 3, 1967, the date shown in the joint motion filed in Court on October 12, 1967, on which payment of the sum was tendered by defendant to plaintiff. The interest total is computed to be $2,382.87.

Attorneys, upon receipt of this memorandum opinion, shall prepare and approve an order, providing therein for filing this opinion as a part of the record in this action, adjudging the amount due and payable by defendant to plaintiff as herein determined and found, and directing full compliance with the last paragraph of this Court's order of October 12, 1967, concerning disbursements of the sum herein adjudged to be due and payable to plaintiff.